[Civ. No. 13433. First Dist., Div. One. Nov. 19, 1947.]

UNIVERSAL INSURANCE COMPANY (a Corporation), Appellant, v. MANHATTAN MOTOR LINE, INC. (a Corporation), Defendant and Respondent; THE AMERICAN DISTILLING COMPANY (a Corporation), Intervenor and Respondent.

Hauerken, Ames & St. Clair and George H. Hauerken for Appellant.

Norman A. Eisner for Respondents.

WARD, J.—This is an action by the Universal Insurance Company for rescission of an insurance policy issued to Manhattan Motor Line, Incorporated, covering certain merchandise while in course of transportation. The policy is referred to as a "Truckman's and Motor Carrier's Cargo Liability Policy." Three counts are contained in the complaint, each setting forth a separate ground of rescission.

The first count alleges "That on or about the 14th day of July, 1945, plaintiff . . . made and issued to the defendant a . . . policy of inland marine insurance . . . for a period of one year from that date . . . by which the plaintiff agreed to pay on behalf of the defendant as the insured, all sums which the defendant should become obligated to pay and does pay by reason of its legal liability to others for loss of and/or damage to lawful goods and/or merchandise shipped on motor trucks and/or truck trailers and/or semi-trailers operated by the insured in California, subject, however, to conditions and requirements contained in said contract of insurance.

"That prior to the issuance of said policy and as a part of the consideration therefor, the defendant expressly represented and agreed that no shipments of liquor would be made by it which would or might be covered by said policy of insurance on open trucks . . .; that the plaintiff would not have issued said policy of insurance to defendant unless defendant made said representation and agreement, because of the added risk.

"That in making said representation and promise and obtaining said policy of insurance from the plaintiff, the

defendant was guilty and practiced fraud and deceit, in that such promise was made by said defendant without any intention of performing the same; that immediately thereafter the said defendant violated the said promise and did make shipments of liquor upon an open truck.

"That immediately upon ascertaining said fraud and deceit, the plaintiff, on or about the *28th* day of September, 1945, gave written notice of rescission of said contract of insurance to the defendant . . . and offered to and did return to the defendant all premiums paid by it on account of said policy of insurance."

The Manhattan Motor Line, the transporter of the merchandise, filed an answer which denied any fraud or deceit, admitted a notice of rescission and alleged that it refused to accept the offer of rescission or the return of the premium. With the approval of the court, The American Distilling Company, a corporation, the owner of the transported goods, upon the basis that the Manhattan Motor Line was insolvent, intervened in resisting the claims of the insurance company. The American Distilling Company had previously brought an action against the Manhattan Motor Line, Incorporated, to recover the loss of the merchandise. The complaint in intervention denied any ground for rescission and prayed that the policy of insurance be declared to have been in full force and effect at the time of the loss of the merchandise. The answer to the complaint in intervention admitted the pendency of an action between The American Distilling Company and the Manhattan Motor Line, Incorporated, and realleged the grounds for rescission.

The second and third counts set forth respectively a failure of consideration, referring to a failure on the part of the Manhattan Motor Line, Incorporated, to pay an alleged $250 premium, and a failure to report correctly and pay premiums based on its gross charges. The allegations of counts two and three, with denials thereof, became issues in the case, and reference thereto appears in the transcript of evidence. There was also considerable discussion thereof by counsel prior to and during the presentation of evidence.

There was attached to the complaint a letter, dated September 21, 1945, from the insurance company to the carrier enclosing a check covering the amount of premiums paid, and notifying the carrier of an election to rescind. The letter contained the following: "Said policy was accepted by us upon the express understanding and representation

that no shipments of liquor would be made by you and covered under said policy on open trucks and/or open trailers and/or open semi-trailers, and we are informed that on or about July 26, 1945, you did, in violation of said representation, make a shipment of liquor on an open vehicle.'' This letter was subsequently marked as an exhibit in the case for the plaintiff. Defendant introduced as an exhibit a letter acknowledging receipt of plaintiff's communication, which read in part as follows: ''I hereby notify you that I refuse to accept your offer of rescission and expressly deny and repudiate the alleged grounds that you set forth. The policy was not accepted by you under any express or other understanding or representation that no shipment of liquor would be made by me or would be covered under the policy on open trucks or open trailers or open semi-trailers. . . . We obtained this insurance in good faith and expect you to abide by the terms of your policy. The check for $80.36 tendered by you in conjunction with your letter of September 21, 1945 is returned herewith.'' This letter was signed by the president of defendant company.

The plaintiff has appealed from the judgment. ▮ The second and third causes of action are not argued, although the court found contrary to the contentions of plaintiff on all counts. Plaintiff states that of the three counts contained in the complaint ''the most important is the first, and it is to this count that the evidence was principally directed.'' Plaintiff relies upon an alleged parol promise made by defendant prior to the issuance of the policy without intention of performance. There does not appear to be any argument or further reference to the subject matter in counts two and three. (See Rules on Appeal, rules 13 and 15(a).) In view of this circumstance, any claimed erroneous matter in connection with the last two counts may be deemed to have been waived. (*Romero* v. *Letts,* 7 Cal.2d 503 [61 P.2d 449]; *County of Humboldt* v. *Kay,* 57 Cal.App.2d 115 [134 P.2d 501].)

The court found ''That it is not true that prior to the issuance of said policy or as a part of the consideration therefor, the defendant expressly or at all represented or agreed that no shipments of liquor would be made by it which would or might be covered by said policy of insurance on open trucks and/or open trailers and/or open semi-trailers; that it is not true that plaintiff would not have issued said policy of insurance to defendant unless defendant made said representation and/or agreement. In this connection

the Court finds that any reference to any restriction upon the cargo which defendant might carry was deliberately and intentionally omitted from said policy by plaintiff, and that plaintiff did not consider as material or rely upon any alleged representation or agreement that shipments of liquor would not be made on open trucks and/or open trailers and/or open semi-trailers.

"That it is not true that in obtaining said policy of insurance from the plaintiff defendant was guilty or practiced fraud or deceit, or that any promise was made by defendant without any intention of performing the same; that it is not true that the defendant violated any promise by making shipments of liquor upon an open truck.

"That on or about the 28th day of September, 1945, plaintiff gave written notice of rescission of said contract of insurance to defendant in the form of the notice attached to said complaint, and offered to return all premiums paid by defendant on account of said policy of insurance. In this connection the Court finds that said defendant refused to accept said offer of rescission or said return of premium."

The court also found that the shipper had delivered certain merchandise to the carrier, part of which was lost or destroyed; that the value of the lost or destroyed merchandise was $11,800; that the carrier was insolvent, and "That intervenor has a direct interest in this litigation and in resisting the plaintiff's attempt to rescind said contract of insurance." The judgment orders and decrees "that the policy of insurance issued by plaintiff and referred to in said complaint was not rescinded; that said policy was valid and in full force and effect from the time of its issuance and was valid and in full force and effect at the time of the loss of the property of the intervener herein while in course of transportation by the defendant."

Only four witnesses testified: Frank J. Russi, a solicitor for the general insurance brokerage firm of French & St. Clair; Arthur O. St. Clair, a partner in the brokerage firm; Harry W. Browne, vice president of the firm which acted as general managers for plaintiff company, and Phillip Rene (sometimes referred to as Jack Renee), the president and "operating head" of the defendant carrier.

The evidence shows that a trailer, part of the equipment of the defendant carrier, while hauling a load of liquor, the property of the intervenor shipper, overturned on the high-

way while going downgrade. The liquor was covered with a tarpaulin fastened to the trailer. There was some breakage but the greater part of the liquor was stolen. One of the attorneys stated: ". . . the well known American motorists coming along and within a very short period of time there were hundreds of automobiles there and everybody was taking liquor.''

Originally Russi, the insurance solicitor on behalf of French & St. Clair, contacted Rene and successfully solicited the replacing of certain insurance policies. During the conversation the kind of equipment used in transporting merchandise, the facts that part of the liquor goods had been carried in open trucks and trailers, and that it was the endeavor of defendant to supply new equipment, were discussed. There had been losses but none ''while the commodities were on the truck,'' ''on a long haul on an open trailer.'' The losses were sustained ''after they were unloaded.'' Rene, speaking of the conversation with Russi, testified: ''He said, 'Where was that whiskey taken?' I said it was taken in Los Angeles. That is where most of it was stolen. And we both agreed that it wasn't good policy to handle the liquor in open pieces of equipment. But he didn't tell me that he wouldn't give me the insurance unless I got rid of the open truck, and hauled it strictly in closed equipment, because that could not have been done at that time. In other words, what I would have had to do was take that $15,000 piece of equipment and let it stand out in the street and rot.'' Rene testified that he continued, after the issuance of the policy involved herein, to ship in both open and closed trucks. Russi's version of these conversations is entirely different from that of Rene. The trial court had the right, in the face of the conflict in the evidence, to determine whose recollection and interpretative explanation of the conversations was correct. As will be noted from the findings, the trial court adopted the view of Rene as to the conversations preliminary to the issuance of the policy. The trial judge declared that the story to the contrary was inherently improbable and that the ''demeanor'' of the solicitor and the ''surrounding facts indicate that no such representation was ever made by Mr. Rene.''

The presumption that a witness speaks the truth may be repelled by the manner in which he testifies or the character of his testimony, and the triers of the facts are the exclusive judges of his credibility. (Code Civ. Proc., § 1847; *Tingey* v. *E. F. Houghton & Co.*, 30 Cal.2d 97, 102 [179 P.2d 807].)

Russi testified that he communicated to St. Clair the alleged promise of Rene as to future hauling of liquor in locked vehicles. St. Clair, whose firm was not licensed as an agent of plaintiff insurance company, testified that he represented to Browne, vice president of the firm which was general manager of plaintiff insurance company, that the carrier would use only locked equipment. The plaintiff relies upon the rule that where one engaged in the insurance business requests the issuance of an insurance policy from a company which he is not legally authorized to represent, he is appearing at such time as the agent for the applicant. (Ins. Code, § 33.) The insurance company and the insured are the contracting parties. The party obtaining the insurance is paid by the insurance company; he is the agent, nevertheless, of the insured. The transcript of evidence designates French & St. Clair as insurance brokers. A broker is not necessarily an agent. (29 Am.Jur., p. 110, § 86.) However, the broker, impliedly, without the knowledge of the insured may be the latter's agent. The plaintiff contends, and intervenor-respondent admits, that the designated "brokers" were agents of the defendant carrier in the negotiation for the issuance of the present policy. That is the law by which this court is bound. (*Solomon* v. *Federal Ins. Co.*, 176 Cal. 133 [167 P. 859]; *Purcell* v. *Pacific Automobile Ins. Co.*, 19 Cal.App.2d 230 [64 P.2d 1114]; *Bennett* v. *Northwestern Nat. Ins. Co.*, 84 Cal.App. 130 [257 P. 586]; 32 C.J. 1054; 29 Am. Jur., *supra;* Couch, Cyclopedia of Insurance Law, pp. 12, 97.)

Fraud and deceit are the grounds set forth in the first cause of action of the complaint praying for rescission of the contract. As heretofore pointed out the court was justified in concluding that the defendant carrier, through its manager Rene, did not practice fraud or deceit in the negotiations to obtain the insurance. There remains the possibility that St. Clair, the agent of the defendant, may have been guilty of fraudulently and deceitfully obtaining the insurance policy. There is no direct allegation in the complaint that the agent St. Clair made any misrepresentation to the insurance company.

Plaintiff states the controversy as follows: "The sole question therefore was, was a representation made which was intentionally false? The broker testified that he made a positive representation that the principal did not intend to ship liquor on open trucks in the future. The principal testified that he had no intention of discontinuing the shipment of liquor in

open trucks. Whether the broker was misled by his client is simply beside the point. A representation was made to the insurance company which the principal had no intention of keeping." The answer to that is purely factual. It appears in the findings based upon evidence that any reference to restriction of cargoes was deliberately and intentionally omitted and that plaintiff did not consider it material to rely on any representation that merchandise would not be hauled on open trucks or trailers.

The statement made by St. Clair to Browne which is claimed to be the basis of the issuance of the policy is that the trucks would be sealed in Sausalito, near San Francisco, "at the time they were loaded, and the seal would be taken off at the time the trucks arrived in Los Angeles." It also appears in evidence that the carrier was engaged in handling merchandise, a substantial portion of which was liquor, between San Francisco and Los Angeles.

Browne, representing the firm acting as general managers for plaintiff company testified: "Yes, Mr. St. Clair renewed the discussion on that line some days later, and at that time he told me he had discussed this matter with the assured, and the assured had undertaken not to transport any liquor on their main line between San Francisco and Los Angeles, or anywhere else, in open trucks. So we discussed the matter still further, and on the understanding, the definite representation that there was no liquor to be hauled on open trucks, then and then only, did we agree to issue a policy." A proposed change to haul only in locked trucks later was eliminated as a consideration of their issuance of the policy. Browne further testified: "I asked Mr. St. Clair, in view of the fact that they were not going to transfer liquor on their open trucks, would it be in order for us to put a warranty to that effect on the policy. He said it would, except for one thing: These people, in the course of their business, have a pick up service, like all these large transportation companies have, pick up small packages from individual stores and bring them in to the depot to be sent on their main line haul, and that a driver unknown to his owner could easily pick up an odd case of liquor here and there during the week and bring it in to his assembly depot, and that case of liquor on that truck would nullify the entire insurance on everybody else's merchandise. For that reason he asked us not to put a warranty on the policy. . . . And purely on the discussion and understanding we had we didn't put a warranty on the policy, thereby giving

the assured a much better policy than if they had a warranty on it." In addition, the insurance company made its own private investigation through other insurance companies and knew the approximate extent of previous losses from unlocked trucks or trailers. St. Clair testified: "He [Browne] telephoned my office and left a message that he had some information regarding losses that he had secured from other insurance companies or from adjusters wherein the loss experience had been bad."

It is apparent from the testimony of St. Clair and of Browne that a clause forbidding the hauling of merchandise in open trucks or trailers primarily was not inserted in the policy because transportation companies have a "pick-up" system for small packages collected from individual stores, transported to the assembly depot "to be sent on the main line haul." If the insurance company desired a different provision covering the short or "pick-up" and the long haul it would have been an easy matter to insert a provision in the policy that the carrier would not be permitted to transport merchandise on long or main line hauls except in locked vehicles. The evidence shows that prior to the present incident of the truck or trailer running off the road and overturning "there wasn't any whiskey ever taken off of the trucks up until the time they were backed up against the dock [at the end of the journey] . . . there was never any theft on a long haul on an open trailer . . . [the thefts occurred] after they were unloaded."

The complaint alleges, as stated, that the policy was issued "subject however, to conditions and requirements contained in said contract of insurance." The policy in the present case obligates the plaintiff insurance company on behalf of the insured to pay all legal liability of the insured carrier for loss or damage to goods or merchandise shipped on trucks or trailers "subject to the limits hereinafter stated." Certain exclusions are listed, but no limitation in relation to locked and sealed or unlocked and unsealed trucks or trailers in carrying merchandise, and no provision, condition, covenant, warranty or limitation on the route or destination except that the trucks and trailers must be operated between points and places in California.

In a suit to rescind a written contract oral evidence of fraud is generally admissible, but here we have a finding that fraud was not perpetrated by the defendant carrier and that the representations made by the insurance broker de-

clared to be the agent of the defendant carrier, were immaterial in view of the fact that the plaintiff insurance company, aware of the conditions under which the defendant carrier operated, did not deem it advisable to place in the policy a covenant limiting either the kind of merchandise or the manner or method of operation of the motor trucks or the attached trailers. Under such circumstances the alleged representations become immaterial and the question of fraud disappears. As the trial court stated: "The reason assigned by Mr. St. Clair and Mr. Browne for not making the agreement not to haul liquor in open trucks a part of the policy is not supported by good reason."

Many of the legal contentions presented by plaintiff insurance company or the reply of defendant carrier do not here require determination or consideration, namely, that a false representation as to a material fact or intention is basis for rescission, even though it involves a promise of future conduct; that the Insurance Code goes even further and provides that a representation intentionally false gives the right to rescind whether material or not; that a rescission of contract may be had even against an innocent principal because of unauthorized misrepresentations by his agent, and that it is not necessary to show specifically an intent to deceive. The real issue, the factual question of misrepresentation, was submitted to the trial court and appears to have been decided impartially and justly.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied December 19, 1947, and appellant's petition for a hearing by the Supreme Court was denied January 15, 1948.