[Civ. No. 3903. Fourth Dist. Sept. 29, 1948.]

Estate of WILLIAM JOSEPH WORLEY, Deceased. VIRGINIA WORLEY, as Administratrix, etc., Respondent, v. BEATRICE WORLEY WHITAKER, Appellant.

Gray, Cary, Ames & Driscoll for Appellant.

Wright, Thomas, Dorman & Fox for Respondent.

MUSSELL, J.—This is an appeal from a decree of the superior court approving waiver of accounting and final account and report of the administratrix and final distribution. The decree was based on the final account and petition for distribution filed by the administratrix wherein she alleged that all the property of the estate was community property and that therefore, she in her individual capacity, as widow of the decedent, was entitled thereto. Appellant filed objections in which she alleged facts which she contended established that the money in possession of the administratrix was separate property, in which she, as the daughter of the decedent by a former marriage, was entitled to share. The decision was based entirely upon these two documents and the court found that all of the property inventoried in the estate

was the community property of the decedent and that no part of it was received as a gift and that respondent administratrix was entitled to the entire estate.

The facts, which are not in dispute, are as follows: Prior to December 23, 1941, decedent, who was then the husband of respondent, was employed upon Wake Island by an organization known as Contractors Pacific Naval Air Bases, and as such employee was engaged in construction work being carried on under contracts between his employer and the United States. On that date, and while so employed, decedent was captured by the Japanese forces and thereafter remained a prisoner of the Japanese until his death in Japan on February 27, 1945.

The asset of the estate in controversy is the sum of $5960.08 paid to respondent as administratrix under the provisions of an act of Congress approved by the President on December 2, 1942, effective December 7, 1941, and entitled, as amended:

"Chapter 12. Compensation for injury, death, or detention of employees of contractors with the United States outside the United States." (57 Stats. 626; 42 U.S.C.A. § 1701.)

The sole contention of appellant is that the money so received by respondent was a gift and was, therefore, separate property of the decedent.

In order to pass upon the question involved it is first necessary to examine the wording of the act of Congress, known as S 2412, Public Law 784, 77th Congress. As originally enacted it was entitled, "An Act to provide benefits for the injury, disability, death, or enemy detention of employees of contractors with the United States, and for other purposes."

"Title I. Compensation for injury, death, or detention of employees of contractors with the United States and certain other persons or reimbursement therefor." It provides in part as follows:

"Sec. 101—(a) In case of injury or death resulting from injury—

"(1) to any person employed by a contractor with the United States, if such person is an employee specified in the Act of August 16, 1941, . . . as amended, and no compensation is payable with respect to such injury or death under such Act; . . . (3) . . . and such injury proximately results from a war risk hazard, whether or not such person then actually engaged in the course of his employment, the provisions of the Act entitled 'An Act to provide compensation for employees of the United States suffering injuries while in the performance of their duties, and for other purposes,'

approved September 7, 1916, (5 U.S.C. Ch. 15) as amended and modified by this Act, shall apply with respect thereto, in the same manner and to the same extent as if the person so employed were a civil employee of the United States and were injured while in the performance of his duty, and any compensation found to be due shall be paid from the Compensation Fund established pursuant to section 35. of said Act of September 7, 1916, as amended.''

The amended act, 42 United States Code Annotated, section 1701, provides in part as follows:

''(b) (1) Any person specified in subsection (a) who—

''(A) is found to be missing from his place of employment, whether or not such person then actually was engaged in the course of his employment, under circumstances supporting an inference that his absence is due to the belligerent action of an enemy, or

''(B) is known to have been taken by an enemy as a prisoner, or otherwise, . . . shall, . . . be regarded . . . as totally disabled, and the same benefits as are provided for such disability under this subchapter shall be credited to his account and be payable to him for the period of such absence or until his death is in fact established . . . . : *Provided,* That if such person has dependents residing in the United States . . . the Administrator during the period of such absence may disburse a part of such compensation, accruing for such total disability, to such dependents, which shall be equal to the monthly benefits otherwise payable for death under this subchapter, and the balance of such compensation for total disability shall accrue and be payable to such person upon his return from such absence.''

''Benefits found to be due under this subsection shall be paid from the compensation fund established pursuant to section 785 of Title 5, as amended; . . . the amount of benefits to be credited to the account of such person . . . shall be 100 per centum of the average weekly wages of such person, . . . and should a person entitled to benefits for detention also be entitled to workmen's compensation or similar benefits under any other law, agreement, or plan, . . . where such other benefits are paid or to be paid directly or indirectly by the United States, the amount thereof accruing as to the period of absence shall be taken into account and the benefits credited to the amounts of the detained person reduced accordingly.''

Section 1705: ''(c) Where any person specified in section 1701(a) of this title, or the dependent, beneficiary, or allottee of such person, receives or claims wages, payments in lieu of wages, insurance benefits for disability or loss of life (other than workmen's compensation benefits) and the cost of such wages, payments, or benefits is provided in whole or in part by the United States, the amount of such wages, payments, or benefits shall be credited, . . . against any payments to which any such person is entitled under this subchapter.''

It is significant in considering the intent of Congress that the word ''gift'' nowhere appears in the statute. The payments provided for are referred to as ''compensation,'' ''benefits,'' ''compensation for disability,'' ''compensation benefits'' and ''detention benefits,'' and are measured by and given in lieu of wages which the employee, but for the fact that he was taken prisoner, would have earned. Under the provisions of this act the employee is to be regarded as totally disabled and the same benefits payable under the act are credited to his account and are payable to him for the period of his absence. Payment of a portion of such compensation to dependents is provided and compensation paid under any other statute on account of such absence is deducted. Benefits found to be due are payable from a compensation fund. Where claim is made for wages, payments in lieu of wages, insurance benefits for disability or loss of life (other than workmen's compensation benefits), and the cost, is paid in whole or in part by the United States. It is deducted from payments made under this act. The provisions of the act to provide compensation for employees of the United States suffering injuries while in the performance of their duties is made to apply with respect thereto in the same manner and to the same extent as if the person so employed were a civil employee of the United States and was injured while in the performance of his duty. The purpose of this act is to provide compensation for wage loss in case of detention, or death, and its provisions are not in accord with the theory that the payments are to be considered as a gift.

A gift is defined in section 1146 of the Civil Code as a transfer of personal property, made voluntarily and without consideration. Section 1605 of the same code provides as follows: ''Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the

time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise.''

As heretofore noted the payments made under the provisions of the federal statute were referred to as ''compensation'' and ''benefits.'' Both of these words have been defined to be equivalent to or synonymous with the word ''consideration.'' (15 C.J.S. 654.)

In *Hughson Condensed Milk Co.* v. *State Board*, 23 Cal. App.2d 281, 285 [73 P.2d 290], it was said:

''The word 'compensation' is defined in 12 C.J., beginning on page 229, as follows: 'An act which a court orders to be done, or money which a court orders to be paid, by a person whose acts or omissions have caused loss or injury to another, in order that thereby the person damnified may receive equal value for his loss, or be made whole in respect of his injury; a consideration; the consideration or price of a privilege purchased; an equivalent in money for a loss sustained; an equivalent given for property taken or for an injury done to another; the giving back an equivalent in either money which is but the measure of value, or in actual value otherwise conferred; the rendering an equivalent in value or amount; indemnification; making amends; payment of damages; a recompense in value; a recompense or reward for some loss, injury or service, especially when it is given by statute; remuneration for the injury directly and proximately caused by a breach of contract or duty; remuneration or satisfaction for injury or damage of every description; that return which is given for something else; that which is necessary to restore an injured party to his former position. The term etymologically suggests the image of balancing one thing against another, its primary signification being equivalence and the secondary and more common meaning something given or obtained as an equivalent.' ''

The precise question here involved has not been decided in any case to which our attention has been directed. However, it appears that the manifest intention of Congress was not to make a ''gift'' of payments but to provide for compensation for loss of earnings to those employees who in time of war were held as prisoners. The decedent, at the time he was taken prisoner, was an employee rendering service for the Navy. His wages were in effect continued by the Government during the time of his detention. His employment was necessary to qualify him to receive the compensation provided by the act of Congress. The statute was passed in 1942. By its

terms its effective date was as of December 7, 1941, prior to the surrender of Wake Island. Under the circumstances sufficient consideration existed for the payment of the compensation benefits and the funds in controversy should be considered as community property as defined in section 164 of the Civil Code.

Judgment affirmed.

Griffin, Acting P. J., concurred.

A petition for a rehearing was denied October 26, 1948, and appellant's petition for a hearing by the Supreme Court was denied November 22, 1948.