[Civ. No. 22645. Fourth Dist., Div. One. Oct. 7, 1981.]

In re the Marriage of LAURA LEE and ROBERT MONROE SHELDON.
LAURA LEE SHELDON, Respondent, v.
ROBERT MONROE SHELDON, Appellant.

374

COUNSEL

William E. Blatchley for Appellant.

Nancy H. Flick for Respondent.

OPINION

WIENER, J.—Robert Monroe Sheldon appeals an interlocutory judgment dissolving his 13-year marriage.

The principal issue concerns the retroactivity of the United States Supreme Court's recent decision in *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728] and its applicability to cases not final on appeal as of the date *McCarty* was filed. We stress our decision is not meant to be a holding for all seasons resolving all the issues precipitated by *McCarty*. We only answer the narrow issue before us, concluding (1) the principles enunciated by the Supreme Court which govern the retroactivity of high court decisions mandate *McCarty* not be accorded full retroactivity, and (2) *McCarty* should not be applied to cases not final on appeal unless the military spouse requested the trial court reserve jurisdiction on the character of the property interest in the pension or timely raised and briefed the federal preemption issue on appeal.[1]

*Factual and Procedural Background*

The principal assets at issue in this dissolution proceeding were the family residence and Robert's United States Navy pension.[2] The trial court found the value of the residence to be $65,750 and the value of the pension to be $116,996. It awarded all the benefits due under the pension to Robert and the entire interest in the residence to Laura. Laura waived any difference in value of the respective properties.

---

[1]An unarticulated, but sensitive issue permeating this case is the effect of our holding on the practicing bar. Other than indicating we have carefully considered the fallout aspect of this case and speculated on the fallout in cases which may follow, we feel it inappropriate to comment further on issues which are not before us.

[2]Robert admitted at trial, both personally and through his attorney, that his military pension rights constituted community property.

interest in each of the assets. He did not contest the characterization of the pension rights as community property.

On June 8, 1981, we filed our unpublished opinion in this case, upholding the valuation of the pension and the distribution scheme. On June 26, the United States Supreme Court filed its decision in *McCarty* v. *McCarty, supra*, 453 U.S. 210, holding that federal law precludes a state from characterizing a military pension as community property in order to divide it between the parties on dissolution of the marriage.

Robert then filed a petition for rehearing, arguing *McCarty* compels us to reverse the interlocutory judgment and remand for a new division of the community property and a recharacterization of Robert's pension rights as his separate property. Laura countered that the stipulation at trial coupled with Robert's *express* failure to contest the community nature of the pension rights on appeal rendered the *McCarty* holding inapplicable to the instant case.[3] We granted a rehearing to address several problems inherent in the application of *McCarty* to California dissolution proceedings.

### Retroactivity of McCarty

We must first concern ourselves with the degree of retroactivity to be accorded the *McCarty* decision. If *McCarty* is fully retroactive, Robert is entitled to receive the benefits of the decision, and the effect of the stipulation and failure to raise the issue on appeal become irrelevant.

The United States Supreme Court has had numerous occasions to review the question of prospective versus retroactive application of a judicial decision. (See, e.g., *England* v. *Medical Examiners* (1964) 375 U.S. 411, 422 [1 L.Ed.2d 440, 449-450, 84 S.Ct. 461]; *Linkletter* v. *Walker* (1965) 381 U.S. 618 [14 L.Ed.2d 601, 85 S.Ct. 1731]; *Stovall* v. *Denno* (1967) 388 U.S. 293, 296-301 [18 L.Ed.2d 1199, 1203-1206, 87 S.Ct. 1967].) Most recently, in *Chevron Oil Company* v. *Huson* (1971) 404 U.S. 97 [30 L.Ed.2d 296, 92 S.Ct. 349] (hereinafter *Hu-*

---

[3]Appellant's opening brief, filed in this court on March 20, 1981, contained the following statements: "Military retirement pay constitutes community property to the extent earned during the marriage. [Citation.] [¶] Appellant herein does not contest the fact that petitioner is entitled to a portion of his retirement pay. Said fact was stipulated at trial . . . ."

On October 20, 1980, the United States Supreme Court announced it had postponed consideration of jurisdiction in *McCarty* pending a full hearing of the case on the merits. (See 449 U.S. 917 [66 L.Ed.2d 145, 101 S.Ct. 314].)

*son*),[4] the court discussed the issue at some length, identifying three factors to be considered:

(1) whether "the decision to be applied nonretroactively ... establish[es] a new principle of law, either by overruling clear past precedent on which litigants may have relied, [citation] or by deciding an issue of first impression whose resolution was not clearly foreshadowed, [citation]";

(2) whether the "history ... purpose and effect" of the rule mandates restrospective operation; and

(3) whether retroactive application of the rule "'could produce substantial inequitable results ..., "injustice or hardship" ....'" [Citation.]" (*Id.*, at pp. 106-107 [30 L.Ed.2d at p. 306].)[5]

■ Applying this standard to the *McCarty* decision, we are convinced that *McCarty* should not be accorded fully retroactive effect. *McCarty* presented an issue of first impression for the United States Supreme Court. Although the majority opinion relied on the two-year-old decision in *Hisquierdo* v. *Hisquierdo* (1979) 439 U.S. 572 [59 L.Ed.2d 1, 99 S.Ct. 802] for support, *Hisquierdo* involved an entirely different statutory scheme and clearly did not mandate the *McCarty* holding. (See *In re Marriage of Milhan* (*Milhan II*) (1980) 27 Cal.3d 765, 772-777 [166 Cal.Rptr. 533, 613 P.2d 812]; *Gorman* v. *Gorman* (1979) 90 Cal.App.3d 454, 460-462 [153 Cal.Rptr. 479].) Moreover, *McCarty* effectively overrules consistent and well-settled California precedent holding a military pension constitutes community property, the divisibility of which on dissolution is not preempted by federal statute. (See, e.g., *French* v. *French* (1941) 17 Cal.2d 775, 778 [112 P.2d 235,

---

[4]*Huson* involved the retroactivity of the court's decision in *Rodrigue* v. *Aetna Casualty Co.* (1969) 395 U.S. 352 [23 L.Ed.2d 360, 89 S.Ct. 1835], holding that a state's applicable statute of limitations, rather than the admiralty doctrine of laches, governed an action for injuries sustained while plaintiff was working on an oil drilling rig operating on the Outer Continental Shelf of Louisiana's Gulf Coast.

[5]In *Stovall* v. *Denno, supra,* 388 U.S. 293, 297 [18 L.Ed.2d 1199, 1203], the court set out a similar test for application to retroactivity questions involving constitutional rules of criminal procedure: "The criteria guiding resolution of the question implicates (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." The similarity of this test to the factors enunciated by the court in *Huson* strongly suggests that retroactivity questions in all areas involve like considerations.

134 A.L.R. 366], overruled on other grounds in *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164]; *In re Marriage of Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449], cert. den. 419 U.S. 825 [42 L.Ed.2d 48, 95 S.Ct. 41]; *In re Marriage of Milhan* (*Milhan I*) (1974) 13 Cal.3d 129, 131 [117 Cal.Rptr. 809, 528 P.2d 1145]; *In re Marriage of Stenquist* (1978) 21 Cal.3d 779, 782 [148 Cal.Rptr. 9, 582 P.2d 96].) ■ A state supreme court enjoys a position equal to that of lower federal courts where questions of federal statutory and constitutional law are involved, and is bound only by the contrary rulings of the United States Supreme Court on such issues. (See *Rohr Aircraft Corp.* v. *County of San Diego* (1959) 51 Cal.2d 759, 764-765 [336 P.2d 521], revd. on other grounds (1960) 362 U.S. 628 [4 L.Ed.2d 1002, 80 S.Ct. 1050]; *People* v. *Estrada* (1965) 234 Cal.App.2d 136, 145 [44 Cal.Rptr. 165, 11 A.L.R.3d 1307].) ■ Just as the *Huson* court concluded retroactivity was inappropriate because the court's previous decision in *Rodrigue, supra*, "overruled a long line of decisions by the Court of Appeals for the Fifth Circuit" (404 U.S. at p. 107 [30 L.Ed.2d at p. 306]), so we conclude retroactive application of *McCarty* is unwarranted since the Supreme Court's decision overruled a long line of California Supreme Court cases which had definitively spoken on the issue.

Similarly, our review of the rationale underlying the *McCarty* decision does not convince us that retroactive application is mandated. The majority opinion notes two primary purposes of the military pension plans which community property division threatened to undermine. First, Congress has sought "to provide for the retired service member, and to meet the personnel management needs of the active military forces." (453 U.S. at pp. 232-233 [69 L.Ed.2d at p. 606, 101 S.Ct. at p. 2741].) In discussing this objective of providing for the retired service member,[6] the majority emphasizes that "the community property division of retired pay may disrupt the carefully balanced scheme Congress has devised to encourage a service member to set aside a portion of his

---

[6]Without discussion, the court also summarily remarked, "[s]tate courts are not free to reduce the amounts that Congress has determined are necessary for the retired member." (453 U.S. at p. 233 [69 L.Ed.2d at p. 606, 101 S.Ct. at p. 2741].) It is difficult to accept and apply the proposition that the amount of a retiree's pension is in any sense based on a congressional determination of his "need." Pension amounts are calculated on a percentage of active duty pay, which is in turn dependent on the service member's rank and grade. These amounts have little or no relationship to need, being compensation for past services rendered. In all probability, Congress intended both active duty pay and military pensions as compensation entitlements. (Cf. *Estate of Worley* (1948) 87 Cal.App.2d 760, 764-765 [197 P.2d 773].)

or her retired pay as an annuity for a surviving spouse or dependent children." (*Ibid.*) While a purely prospective application of *McCarty* may have the effect of discouraging some already-divorced-but-not-yet-retired service members from electing to fund an annuity, the number of factors which must affect such a decision make the potential effect speculative at best.[7] Commenting on the second objective, the court said that "the military retirement system is designed to serve as an inducement for enlistment and reenlistment, to create an orderly career path, and to ensure 'youthful and vigorous' military forces." (*Id.*, at p. 234 [69 L.Ed.2d at pp. 606-607, 101 S.Ct. at p. 2742], fn. omitted.) Potential division of the military pension, allegedly diminishes "one of the inducements selected to make military service" attractive as well as "discourag[ing] retirement by reducing the retired pay available to the service member, ..." (*Ibid.*) It is clear that the concept of an inducement operates prospectively as to potential enlistees and reenlistees. A nonretroactive application of *McCarty* would do no harm to this asserted federal interest. As to the discouraging retirement rationale, the argument assumes the service member is not yet retired. Many members subject to pre-*McCarty* divorce decrees, however, have *already* retired and the pension incentive is inapplicable to them. Moreover, even as to those divorced members who have not yet retired, community property division of pension rights discourages retirement only to the extent the pension was actually divided in kind; if the nonservice member spouse received an offsetting award of other community property in exchange for the pension rights, as in the present case, a failure to apply *McCarty* retroactively will not discourage retirement of that service member. We thus conclude that the harm to federal interests which would be occasioned by a purely prospective application of *McCarty* is minimal. Rather, the congressional purposes articulated by the *McCarty* majority can be adequately served even if the decision is not given retroactive effect.

While review of the first two factors identified in *Huson*'s discussion of retroactivity does not indicate *McCarty should* be accorded retroactive effect, examination of the third factor—the potential for injustice and hardship—convinces us the court's decision *should not* be applied to judgments which were final before *McCarty* was filed. In perhaps no other area of law is the need for stability and finality greater than mar-

---

[7]Even a purely prospective reading of *McCarty* will apply to all service members not yet divorced. Those members already divorced who have already retired are ineligible to elect to fund an annuity (see 10 U.S.C. §§ 1431(b) and 1448(a)); thus, any congressionally ordained incentive will have no effect as to them.

riage and family law. Without guessing as to how our society may structure future social relationships (cf. *Marvin* v. *Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106]), at this stage of our societal development, marital dissolution is almost by definition a mentally, emotionally, and often physically disruptive experience for the parties involved. Divorce inevitably requires old plans be abandoned, new plans made, and perceptions altered to conform to a changed reality. To permit and in fact encourage the relitigation of property interests long after the issues were supposedly settled would merely serve to reopen old wounds and create new ones. There is no guarantee that the nonservice member spouse would have assets sufficient to reimburse the service member for that portion of the pension rights which had previously been an awarded share of community property. Substantial hardship would result in cases where the nonmember relied on the property settlement in converting his or her share into nonliquid assets. Moreover, a reallocation of property interests would likely constitute sufficient "changed circumstances" to trigger a second round of relitigation involving spousal support awards. (See generally, *In re Marriage of Kuppinger* (1975) 48 Cal.App.3d 628, 633 [120 Cal.Rptr. 654]; *Verner* v. *Verner* (1978) 77 Cal.App.3d 718, 727 [143 Cal.Rptr. 826]; but cf. *In re Marriage of Cobb* (1977) 68 Cal.App.3d 855, 860-861 [137 Cal. Rptr. 670].) We also note the immense burden on the administration of justice in our civil courts were such relitigation permitted.[8] Under these circumstances, we conclude that a fully retroactive application of *McCarty* would be inimical to the principles of equity and fairness which underlie this state's family law system. Finding nothing in the nature or rationale of the *McCarty* decision which mandates a retroactive effect, we hold *McCarty* is inapplicable when the property rights in the military pension have been determined by a dissolution judgment which became final before the filing of the United States Supreme Court's opinion. (See *In re Marriage of Brown, supra*, 15 Cal.3d 838, 851 and fn. 13.)

*Application of McCarty to Cases Not Final on Appeal*

 Having concluded *McCarty* is not fully retroactive, we must now concern ourselves with Robert's contention that the principle of limited retroactivity should be invoked to apply the *McCarty* holding to

---

[8]As we noted previously (fn. 4, *ante*), the United States Supreme Court has indicated that recognition of this burden is an appropriate consideration in determining the degree of retrospectivity to be accorded a court decision.

all cases not final on appeal. (See *In re Marriage of Brown, supra,* 15 Cal.3d at p. 851.) In doing so, we are not unaware that the facts of this case present only the tip of an iceberg-like issue which will have ramifications for litigants, attorneys, and the legal system in general. (See generally, 1981 Cal. Fam. L.Rep. 1650, 1658-1662.) As part of the adjudicative system, this court should not anticipate and resolve the possible issues that may yet arise in the myriad of cases at various stages of the legal process which may be affected by the *McCarty* decision. We are also cognizant of pending legislation in both houses of Congress aimed at negating the impact of *McCarty.* (See 453 U.S. at p. 431, fn. 25 [69 L.Ed.2d at p. 605, 101 S.Ct. at p. 2740].) Accordingly, we limit our discussion in this case to cases in which an appeal was filed before the *McCarty* decision, and do not consider issues such as the resolution of posttrial motions addressed to the trial court which may involve different equitable considerations. (See, e.g., Code Civ. Proc., §§ 662 and 663.)

We have no quarrel with applying *McCarty* to cases not final on appeal where the federal preemption issue was argued by the service member-spouse in the trial court and where the issue was raised on appeal.[9] That is not the case here. As we noted previously (fn. 1, *ante*), Robert stipulated to the community nature of the pension rights in the trial court and expressly reaffirmed that stipulation on appeal, some five months after the United States Supreme Court announced a hearing in *McCarty.* (See fn. 2, *ante.*)

■ We begin our analysis with the well-settled proposition that an appellate court may consider as waived any issues not raised in the appellant's opening brief. (E.g., *Title G. & T. Co.* v. *Fraternal Finance Co.* (1934) 220 Cal. 362, 363 [30 P.2d 515]; *People* ex rel. *D. of P. Wks.* v. *McCullough* (1950) 100 Cal.App.2d 101, 106 [223 P.2d 37]; *Universal Ins. Co.* v. *Manhattan M. Line* (1947) 82 Cal.App.2d 425, 428 [186 P.2d 437].) ■ An equally important corollary to this rule states that a petition for rehearing is an inappropriate occasion to raise arguments not pursued in the original appeal. (E.g., *People* ex rel. *Dept. of Public Works* v. *Mascotti* (1962) 206 Cal.App.2d 772, 779-780 [23

---

[9]We thus anticipate that the service member-spouse in *Milhan* v. *Milhan* (1981) 453 U.S. 918 [69 L.Ed.2d 1000, 101 S.Ct. 3152], in which the United States Supreme Court granted certiorari and remanded to the California Supreme Court for reconsideration in light of *McCarty*, will be accorded the benefits of the new rule since the federal preemption issue was raised on appeal. (See *In re Marriage of Milhan (Milhan II)*, supra, 27 Cal.3d 765.)

Cal.Rptr. 846, 24 Cal.Rptr. 679]; *Sanders* v. *Howard Park Co.* (1948) 86 Cal.App.2d 721, 723 [195 P.2d 898]; *Merchants' Ice etc. Co.* v. *Globe Brew. Co.* (1946) 73 Cal.App.2d 828, 838 [167 P.2d 503].) ▪ Robert contends, however, these rules should not be applied in situations where a definitive higher court opinion declaring a new rule of law is announced after the appellant has filed his opening brief but before the expiration of the appellate court's jurisdiction.

The issue thus presented is not one which has frequently appeared in reported California decisions. Consideration of arguments not timely raised has generally been thought to lie within the discretion of the appellate court. Such discretion appears to have been exercised in *Rayner* v. *Ramirez* (1958) 159 Cal.App.2d 372 [324 P.2d 83], when an issue raised by letter after the filing of briefs was based on a just-filed Supreme Court case which overruled well-settled precedent. The *Rayner* court concluded, "Under the circumstances there appears to be good reason for the failure of plaintiffs to raise the point in their opening brief." (*Id.*, at p. 375.)

On the facts of the instant case, we are unable to reach a similar conclusion. Our view is based on several separate considerations.

First, the Supreme Court's decision to hear *McCarty* preceded the filing of Robert's opening brief by five months. (See 449 U.S. 917 [66 L.Ed.2d 145, 101 S.Ct. 314].) His brief, however, expressly reaffirmed his previous stipulation to the community nature of his pension rights. Since the original stipulation was entered into before the hearing was announced it may be that such action was excusable. After the October 20 announcement, however, Robert should have argued on appeal or in a separate motion to the trial court that continued enforcement of the stipulation would be unjust in light of the United States Supreme Court's action. Having failed to pursue either of these alternatives, it is not unfair that Robert continue to be bound by his original agreement.

Second, the unique nature of the marital institution and the community property concept suggests that the finding of a community interest in the pension rights not be disturbed at this point in the litigation.[10] As

---

[10] Community property is a concept of considerable fluidity and flexibility, recognizing the unique nature of each marital combination. It thus differs considerably from other legal characterizations of property interests. Separate property of the spouses is readily convertible to community property and vice versa. (See 7 Witkin, Summary of Cal. Law (8th ed. 1974) Community Property, § 71, p. 5159.) No particular formali-

we noted earlier (p. 379, *ante*), finality in dissolution proceedings is extremely important from the standpoint of the human beings involved. In situations where a partition judgment is severable, this finality principle indicates that appeal of one portion of the judgment does not necessarily stay operation of other parts. (Cf. *Harrold* v. *Harrold* (1954) 43 Cal.2d 77 [271 P.2d 489]; *In re Marriage of Steinberg* (1977) 66 Cal.App.3d 815, 820-821 [136 Cal.Rptr. 299].) If mere pendency of appellate jurisdiction permitted the raising of the pension rights issue, previously unstayed portions of the judgment might well be affected. The interests of the parties or society are not served by the disruption of plans and expectations which could result. In addition, it seems anomolous to allow the rights of litigants to turn on the fortuity that an appeal on an unrelated issue was filed, thus preventing the judgment from becoming final. Here, for example, Robert's original grounds for appeal concerned an alleged abuse of discretion by the trial court. We had little trouble in disposing of this contention in our first opinion. (See pp. 384-385, *post*.) Had Robert accepted the trial court's conclusion, as well he might have, the judgment would long since have become final. The result would be even more anomolous had Laura filed a meritorious appeal which was followed by Robert's petition for rehearing raising the *McCarty* issue.

Finally, we note that additional support for our conclusion is provided by the recent decision of the Second District Court of Appeal in *In re Marriage of Mahone* (1981) 123 Cal.App.3d 17 [176 Cal.Rptr. 274].[11] On facts virtually identical to those of the instant case, the *Mahone* court indicated, "The stipulation was in accordance with the law as it then stood, and husband is not entitled to relief from the stipulation

ties are required for such a conversion, which may be accomplished by simple oral agreement. (*Beam* v. *Bank of America* (1971) 6 Cal.3d 12, 25 [98 Cal.Rptr. 137, 490 P.2d 257]; *Haseltine* v. *Haseltine* (1962) 203 Cal.App.2d 48, 58 [21 Cal.Rptr. 238].) No consideration independent of the consent of the parties is needed. (Civ. Code, § 4802; *Estate of Wilson* (1976) 64 Cal.App.3d 786, 798 [134 Cal.Rptr. 749].)

The same factors which argue in favor of a flexible community property concept also make it difficult to evaluate Robert's failure to contest the community nature of his military pension rights. Litigants often stipulate to conclusions or fail to pursue technically meritorious legal arguments due to personal values and attitudes toward equity or responsibility. This is particularly true in dissolution proceedings where the parties may have many reasons to attempt to limit the animosity engendered by the litigation process. We thus may only evaluate the validity of a stipulation or decision not to contest based on what the party should have known regarding the state of the law.

[11]We note that a petition for hearing, filed October 5, 1981, is pending before the California Supreme Court. Nevertheless, *Mahone* and the instant case will hopefully provide some consistent guidance for the family law bar of the state.

merely because the law was subsequently changed by judicial decision. [Citations.]" (*Id.*, at p. 22 [176 Cal.Rptr. at p. 276].)

Accordingly, we conclude that the holding in *McCarty* is inapplicable to cases where a service member-spouse stipulates to the community nature of his or her pension rights at trial and does not timely contest such characterization on appeal.

*Alleged Abuse of Discretion by the Trial Court*

Robert's additional contentions do not require extensive discussion. He first claims the court abused its discretion in awarding all of his retirement benefits to him and the entire community interest in the family residence to his wife instead of equally dividing those assets in kind.

At trial, William F. Marples, a consulting actuary, testified the community interest in Robert's naval pension was $116,996. In reaching his conclusion he used an interest rate of 6 percent and an increase in cost of living of 5 percent. Robert says the use of these factors amounts to speculation and accordingly the valuation reached was wrong. Admittedly, all actuarial determinations involve some uncertainty. Nevertheless, a trial court has the ability to determine the credibility of an expert's opinion including the reasonableness of underlying factors used in forming that opinion. The court's acceptance of Marple's testimony was within its discretion. (See *In re Marriage of Skaden* (1977) 19 Cal.3d 679, 688-689 [139 Cal.Rptr. 615, 566 P.2d 249].)

As noted previously, the court awarded Robert all the benefits due under his naval pension ($116,996), and awarded Laura the entire interest in the family residence ($65,750 net). A court is not required to divide community property equally in kind. (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 603 [153 Cal.Rptr. 423, 591 P.2d 911].) "[T]he asset distribution method of dividing community property is a permissible means of complying with the mandate of [Civil Code] section 4800. [Citations.]" (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 886 [160 Cal.Rptr. 516, 603 P.2d 881].) In light of the circumstances of the parties and the effect of uprooting children, ages 12 and 8, the court was well within its discretion in awarding her the house, particularly here, where Laura was willing to pay a premium for that division.

Robert also says the court abused its discretion in awarding $50 monthly as spousal support. On a record which reflects Laura's take home pay of about $125 weekly, while Robert had a net monthly income of around $1,035, the court acted within its discretion. (See *In re Marriage of Morrison* (1978) 20 Cal.3d 437 [143 Cal.Rptr. 139, 573 P.2d 41].)

*Disposition*

Judgment affirmed.

Brown (Gerald), P. J., and Work, J., concurred.

On November 4, 1981, the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied December 2, 1981.