## Laborers Combined Funds of Western Pennsylvania v. Mattei

*Gary P. Hunt,* for plaintiffs.
*P. Andrew Diamond,* for defendants.

STRASSBURGER, *J.,* February 6, 1990 — Plaintiffs are the trustees of a health, welfare and pension fund established for the benefit of construction laborers. Defendants are officers and directors of Mattei Brothers Inc., a corporation which was contractually obligated to make contributions to the fund on behalf of its employees.

On March 1, 1984, the trustees commenced an action against defendants, claiming that Mattei Brothers Inc. had failed to make the required contributions to the fund for the period of May 1, 1983 through November 15, 1983. The trustees' claim against defendants was based upon the Pennsylvania Wage Payment and Collection Law, 43 Pa.C.S. §260.1 et seq. Under the WPCL, the officers and directors of a corporation are personally liable for the failure of the corporation to pay wages to its employees. The WPCL has defined "wages" to include fringe benefit contributions which are required to be made by the corporation.

In October 1985, a non-jury trial was held before Judge Bernard J. McGowan. On October 16, 1985, Judge McGowan entered a non-jury verdict in favor of the trustees and against defendants in the amount of $44,241.65.

Defendants filed exceptions to the non-jury verdict which were dismissed after argument. On January 13, 1986 judgment was entered on the non-jury verdict.

Defendants filed an appeal to the Superior Court. While this appeal was pending, the U.S. Court of Appeals for the Third Circuit handed down the decision of *McMahon v. McDowell,* 794 F.2d 100 (3d Cir. 1986). In that decision the Third Circuit held that the WPCL was pre-empted by the Employee Retirement Income Security Act (Pub. L. 93406, 88 Stat. 832, codified as amended in scattered sections of 26 and 29 U.S.C.), to the extent the WPCL dealt with the same matters as ERISA.

This issue had not been raised or argued by defendants during the trial court proceedings, nor had it been raised by way of the post-trial exceptions or in defendants' brief to the Superior Court. However, in the trustees' Superior Court brief, which was filed on July 16, 1986, counsel for trustees directed the court's attention to the *McMahon* decision in a footnote, stating:

"The Matteis did not raise below, and have not raised on this appeal, the issue of whether the WPCL has been pre-empted by the Employment Retirement Income Security Act . . . ('ERISA'). Since they failed to raise this issue in the lower court, it cannot be considered for the first time on appeal. *Amalgamated Cotton Garment and Allied Industries Fund v. Dion,* 341 Pa. Super. 12, 491 A.2d 123 (1985) (appellant attempted to raise the issue of the WPCL's pre-emption of ERISA for the

first time on appeal). Thus, the Third Circuit's recent decision in *McMahon v. McDowell* . . . is irrelevant to this court's consideration of the pending appeal."

The Superior Court affirmed the judgment in December 1986.

In September 1989, the trustees issued execution on the judgment, and a sheriff's sale of a commercial piece of property was scheduled. A few days before the date of the sheriff's sale, defendants filed a petition to open/strike the judgment. By order dated November 28, 1989, this court denied the requested relief. This appeal followed.

Defendants contend that as a result of the *McMahon* case, plaintiffs' judgment is void and thus unenforceable. This court disagrees.

Essentially, what defendants seek is a retroactive application of *McMahon*.[1] Although research has disclosed no case dealing specifically with the retroactivity of *McMahon,* in an analogous preemption situation, the courts of the United States, including the United States Supreme Court, have uniformly held that *McCarty v. McCarty,* 453 U.S. 210 (1981) is not to be applied retroactively.

In *McCarty,* the Supreme Court held that California's community property law permitting the distribution upon divorce of military pensions was pre-empted by federal military pay provisions. Following this decision, numerous attempts were made to overturn property distribution decisions rendered pre-*McCarty,* on the basis that the courts rendering those decisions had lacked subject matter jurisdic-

---

1. The case is not similar to *Kalb v. Feuerstein,* 308 U.S. 433 (1940), relied upon by defendants. That case held that the automatic stay provision of the Bankruptcy Act was self-executing, and thus state court judgments entered in violation thereof were a nullity.

tion over the military pension. The courts *uniformly* rejected such challenges, holding that *McCarty* should not be applied retroactively so as to overturn settled judgments.[2]

Probably the leading case involving the non-retroactivity of *McCarty* was *Sheldon v. Sheldon,* 124 Cal. App. 3d 371, 177 Cal. Rptr. 380 (1981), appeal dismissed for want of a substantial federal question, 464 U.S. 941 (1982). In *White v. White,* 731 F.2d 1440, 1443 (9th Cir. 1984), the court held that the Supreme Court's dismissal for want of a substantial federal question was a decision on the merits of the issues presented in the statement of jurisdiction. One of the questions presented in *Sheldon* was:

"Does federal pre-emption of state community property laws regarding division of military retirement pay render state judgments void for lack of subject matter jurisdiction where such judgments were entered after Congress had pre-empted area of law?"

Other cases holding *McCarty* non-retroactive include *Armstrong v. Armstrong,* 696 F.2d 1237 (9th Cir.), cert. denied 464 U.S. 933 (1983); *Erspan v. Badgett,* 659 F.2d 26 (5th Cir. 1981); *Segrest v. Segrest,* 649 S.W. 2d 610 (Tex.), cert. denied 464 U.S. 894, 104 S.Ct. 242 (1983); *Camp v. Camp,* 142 Cal. App. 3d 217, 191 Cal. Rptr. 45 (1983); *Fallers v. Fallers,* 125 Cal. App. 3d 254, 178 Cal. Rptr. 35 (1981); *Marriage of Vinson,* 57 Or. App. 355, 644 P.2d 635 (1981); *Rodrigues v. Rodrigues,* 133 Ariz. 88, 649 P.2d 291 (1982); *Whenry v. Whenry,* 98

---

2. One case, *Ex Parte Buchanan,* 626 S.W.2d 65 (Tex. App. 1981) had held that *McCarty* was to be applied retroactively. However, it was specifically disapproved by the court en banc in *Ex Parte Hovernale,* 636 S.W.2d 828 (Tex. App. 1982).

N.M. 737, 652 P.2d 1188 (1982); and *Duke v. Duke,* 98 Nev. 148, 643 P.2d 1205 (1982).

Most of the cases analyzed the retroactivity issue in terms of the criteria laid down by the Supreme Court in numerous cases including *Northern Pipeline Construction Company v. Marathon Pipeline Company,* 458 U.S. 50, 102 S.Ct. 2858 (1982). The court there discussed a tripartite standard for determining whether a judicial decision should be accorded retroactive effect:

"(1) Was it clearly foreshadowed, or did it overrule precedent?

"(2) Would retroactive application further or retard the effect of the decision?

"(3) Would retroactivity bring about substantial inequitable results, including harm to the judicial system?"

The cases refusing to apply *McCarty* retroactively found that it had not been foreshadowed, despite the fact that in *Hisquierdo v. Hisquierdo,* 439 U.S. 572 (1979), the court had previously held that railroad retirement pensions were pre-empted from state court consideration. The instant case is even a much stronger case against retroactivity, for only three years prior to *McMahon,* the Third Circuit had specifically held that ERISA did not pre-empt the WPCL. *Carpenter's Health and Welfare Fund v. Kenneth R. Ambrose Inc.,* 727 F.2d 279 (3d Cir. 1983).

The second factor of *Northern Pipeline* also points toward non-retroactivity of *McMahon.* As set forth in *McMahon,* the purpose of this pre-emption provision in ERISA is to provide a uniform procedure for assuring the funding of employee benefit plans. While the instant type of suit could conceivably frustrate that procedure in the future, the overturning of judgments years later when no other

procedure could then be followed not only would not further the plan of ERISA, but would hinder it further.

Finally, many of the above-cited cases point to the third factor of *Northern Pipeline;* "Would retroactivity bring about inequitable results?" In *Sheldon v. Sheldon, supra,* after noting the emotional and financial turmoil caused by a divorce proceeding, the court stated:

"To permit and in fact encourage the relitigation of property interests long after the issues were supposedly settled would merely serve to reopen old wounds and create new ones." 177 Cal. Rptr. at 384, 124 Cal. App. 3d at 380.

Certainly a similar situation exists in the labor arena. Where an often fragile peace exists between labor and management, it would be foolhardy to vacate judgments long thought inviolate and thus risk strife where calm previously existed. Particularly is this so where plaintiffs and others similarly situated relied upon the statutory scheme outlined in the WPCL in efforts to collect the fringe benefit contributions then due. At this late date, statutes of limitation or other procedural bars such as intervening bankruptcies or dissolutions could impair workers' ability to collect sums rightfully due them.

Moreover, according retroactive effect to *McMahon* could also cause an "immense burden on the administration of justice in our civil courts were such relitigation permitted," *Sheldon, supra.* Not only would each judgment debtor seek to reopen the judgment, but executions upon such judgments would be in jeopardy as well. And the employee creditors would of course be bringing other actions to try to enforce their rights through different remedies to replace the remedy newly abrogated.

For the above reasons, it would be improper to apply *McMahon* retroactively in any case. The particular facts of the instant case make it even more inappropriate to grant the relief requested by defendants. *McMahon* was decided by the Third Circuit between the time of trial and the argument on appeal in the Superior Court. Thus defendants could have cited *McMahon* and argued for a limited retroactivity, applying it to cases then on appeal. Compare *Sheldon v. Sheldon, supra,* where the court in rejecting full retroactivity for *McCarty,* did allow limited retroactivity so as to apply it to a case not yet final on appeal where the issue was preserved in the trial court. Yet the instant defendants did not so argue in 1986, although in light of plaintiff's citation to *McMahon* in their brief, defendants had to be aware of the case. Defendants waited three years, until November 30, 1989, to file their petition to open or strike the judgment.

In *Myers v.' Mooney Aircraft Inc.,* 429 Pa. 177, 240 A.2d 505 (1967), plaintiff Wilhere purported to serve defendant Mooney Aircraft Inc. in compliance with Pa.R.C.P. 2180(a)(2). Mooney filed neither an appearance nor an answer and after a default judgment was taken over one and one-half years after the complaint was filed, Mooney wanted an additional 16 months to file a petition to strike (treated by the court as a petition to open) the judgment. The court held that "whatever rights Mooney might have had to attack this judgment have been lost by its own carelessness and the passage of time." 429 Pa. at 191, 240 A.2d at 513. Similarly, the instant defendants by their deliberate bypass of Superior Court in 1986, and inordinate delay of three years thereafter, waived any right they may have had to vacate the judgment.

It would thus have been particularly inappropriate to apply *McMahon* to this case, where defendants did not avail themselves of the opportunity they could have had in 1986, and then waited until 1989 to pursue relief.

In sum, defendants' case was finally decided in 1986. There is no basis for applying a change in the law of this nature to this case, especially at such a late date.