
[No. A053562. First Dist., Div. One. June 10, 1992.]

In re the Marriage of JOHN G. and VIRGINIA T. CURTIS.
VIRGINIA T. CURTIS, Plaintiff and Respondent, v.
JOHN G. CURTIS, Jr., Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for publication except for part III.

**COUNSEL**

Douglas B. Cone for Defendant and Appellant.

Stephen Temko for Plaintiff and Respondent.

**OPINION**

**STEIN, J.**—John and Virginia Curtis were married on October 18, 1957. In August 1974, Virginia Curtis obtained an interlocutory judgment of dissolution from the Alameda County Superior Court. Entry of the final judgment of dissolution was delayed until September 7, 1978—apparently so that she would be able to take advantage of medical benefits offered by her husband's employer—the Navy. As a member of the United States military, John Curtis was entitled to military retirement benefits. Indeed, he retired from the Navy in 1975 and apparently has received military retirement benefits from that date forward. Neither the interlocutory judgment, nor the final judgment of dissolution, however, mentioned those benefits; i.e., the military retirement benefits were an *omitted* asset.

In October 1990, Virginia Curtis petitioned the superior court to reopen the matter in order to divide the military retirement benefits. On November

2, 1990, the superior court issued its minute order determining, as relevant here, that there was a 70 percent community property interest in John Curtis's present and future military retirement benefits.[1] He accordingly was ordered to pay Virginia Curtis 35 percent of those benefits from October 1990 forward, the first payment to be made on November 10. No appeal was taken from this order.

The superior court, however, while recognizing that Virginia Curtis had an interest in benefits earned by her former husband prior to October 1990, further recognized that the decision of whether to award such benefits involved a balancing of equitable principles (see *Henn* v. *Henn* (1980) 26 Cal.3d 323, 332-333 [161 Cal.Rptr. 502, 605 P.2d 10]).[2] In addition, the court, noting that there was pending federal legislation which might affect the validity of its order, specified that its order would be subject to reconsideration in light of the implementation of that legislation.

On March 13, 1991, the court issued a second order, determining that John Curtis was indebted to his former wife in the amount of $83,038 for her community share of the retirement benefits he had already received. Rather than ordering him to pay the debt, the court retained jurisdiction over the matter until November 1992, "when the subject will be reexamined in light of then applicable federal law."[3] John Curtis has appealed from this order.

I.

*Failure to Appeal From the November 1990 Order*

■ As noted above, the November 1990 order determined that there was a 70 percent community property interest in John Curtis's present and future military retirement benefits. It necessarily was predicated on the superior court's determination that it had the power to reopen the 1978 judgment and divide his military retirement benefits. Although he has not filed an appeal from that order, he here attacks it on several grounds.

The November order was appealable. (Code Civ. Proc., § 904.1, subd. (b).) Ordinarily, the failure to file a timely appeal from an appealable order

---

[1] As the date of the order is relevant (see fn. 8), it should be noted that the formal, written order was not filed until November 20.

[2] Thus, at the November 1 hearing, Virginia Curtis's attorney conceded that John Curtis might have an argument "for a continuance on the basis of past payments, as far as proof or discovery, concerning whether it's equitable or not," and the equities were argued by John Curtis in the subsequent proceedings. The court therefore continued the matter until December 1991 in order to permit John Curtis to seek discovery from his former wife.

[3] The court recognized that the pending federal legislation might defeat Virginia Curtis's claim to future benefits. It apparently intended to determine whether, and how much, John Curtis should pay of his earned benefits in light of her right, if any, to future benefits.

precludes a party from obtaining appellate review of the issues determined therein. (*Norman I. Krug Real Estate Investments, Inc.* v. *Praszker* (1990) 220 Cal.App.3d 35, 46 [269 Cal.Rptr. 228].) John Curtis, however, points out that a void order is always subject to collateral attack (*People* v. *West Coast Shows, Inc.* (1970) 10 Cal.App.3d 462, 467 [89 Cal.Rptr. 290]; *Costa* v. *Banta* (1950) 98 Cal.App.2d 181, 182 [219 P.2d 478]), and argues that the November order was void because the superior court lacked subject matter jurisdiction over his military retirement benefits. As the issue of subject matter jurisdiction is so inextricably bound up with all of his appellate arguments, we find ourselves in the somewhat anomalous situation of having to resolve those arguments in order to determine whether we have the power to hear them.

## II.

### *The Superior Court Had the Power to Reopen the Dissolution Judgment and Divide the Military Retirement Pension as an Omitted Asset*

John Curtis contends that the superior court lacked subject matter jurisdiction over his military retirement benefits. As part of that contention, he argues that at all times relevant federal law preempted state law in determining the disposition of retirement benefits. He contends that it therefore was error to divide his benefits in accordance with California's community property principles.

The California Supreme Court, in *Casas* v. *Thompson* (1986) 42 Cal.3d 131 [228 Cal.Rptr. 33, 720 P.2d 921], held that California courts have the power to reopen old dissolution actions—such as that involved here—to divide military retirement benefits in accordance with state law principles, where those benefits were an omitted asset in the original dissolution proceedings. The superior court in the present case acted in accordance with the decision in *Casas*.

John Curtis, however, argues that *Casas* was wrongly decided, that it has since been overruled, and that in any event current federal law prohibits the reopening of the dissolution proceedings for the purpose of dividing his military retirement benefits.

### A. *The History of State Law Treatment of Military Retirement Pay*

In 1974, the court in *In re Marriage of Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449] determined that there was no evidence that Congress intended that military retirement benefits be deemed separate

property or that states refrain from classifying interests in such benefits in accordance with state law. In 1981, however, the United States Supreme Court disagreed with *Fithian* and similar cases, finding that indeed federal law preempted state law in the division of military retirement benefits, and that under federal law such benefits were properly characterized as separate rather than community property. (*McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728].) Congress immediately reacted by enacting the Federal Uniform Services Former Spouses' Protection Act (FUSFSPA), 10 United States Code section 1408, which expressly conferred on the states the power to apply their own marital property laws to military retirement benefits. Moreover, FUSFSPA's provisions were made retroactive to June 25, 1981; i.e., to the day prior to the decision in *McCarty*. (*Casas* v. *Thompson, supra*, 42 Cal.3d at p. 140; *In re Marriage of Sarles* (1983) 143 Cal.App.3d 24, 26-29 [191 Cal.Rptr. 514].) It thus became settled that the division of military retirement benefits in any dissolution occurring on or after June 25, 1981, would be made in accordance with state law principles as permitted by FUSFSPA.

## B.  The Decision in Casas v. Thompson

There remained, however, the question of how to handle military retirement benefits which had been omitted as an asset from dissolution proceedings occurring *prior* to FUSFSPA's effective date. In *Casas* v. *Thompson, supra*, 42 Cal.3d 131, the court first noted that it was settled that California courts have the power to reopen dissolution actions to divide omitted assets if the complaining spouse had an interest in that asset at the time of the dissolution. (42 Cal.3d at p. 139, citing *Henn* v. *Henn, supra*, 26 Cal.3d 323.) The question, then, was whether a spouse in a pre-FUSFSPA dissolution had an interest in the other spouse's military retirement benefits as of the date of the dissolution. If so, those benefits were subject to classification according to California's community property laws.

The husband in *Casas* argued that although the *McCarty* decision effectively had been overruled by FUSFSPA, it still defined the rights of military retirees whose dissolutions took place before FUSFSPA's effective date (commonly referred to as pre-*McCarty* dissolutions). Our Supreme Court disagreed, finding that the question was not whether *McCarty* had defined pre-FUSFSPA law, but whether the law stated in *McCarty* should be applied retroactively. The theory behind this distinction was explained by the court as follows: "The problem arises because of a fundamental split in legal philosophy. Blackstone believed that judges do not 'create,' but instead 'find' the law. A decision interpreting the law, therefore, does no more than declare what the law has always been. An overruling decision, under this

theory, also does no more than declare the law—albeit in a more enlightened manner. From this declaratory nature of a judicial decision, the following rule emerges: An overruled decision is only a failure at true discovery and was consequently never the law; while the overruling one was not 'new' law but an application of what is, and had been, the 'true' law. [Citation.] Here, implicitly recognizing this theory, [husband] argues *McCarty* declares what always was, and particularly what was the law in 1966. He contends under the retroactive application of *McCarty*, [wife] did not have a community property interest in his military pension at the divorce. Thus, he concludes she can take nothing by her action to partition.

"However, '[w]hatever doubts of a philosophical nature may remain, the law is nevertheless clear: a state court has power to give an overruling decision prospective application only, and to deny it any retroactive effect.' [Citation.] This principle derives from the view that judges make law rather than declare the law. Adherents to this view state that a decision of a state's highest court, though later overruled, is law nonetheless for intermediate transactions. [Citation.]" (*Casas* v. *Thompson*, *supra*, 42 Cal.3d at p. 140, fn. 3.)

The *Casas* court found that the test for determining whether an overruling case, such as *McCarty*, should be applied retroactively requires an analysis of three factors: " 'Whether (1) the decision establishes a "new principle of law" by overruling "clear and past precedent"; (2) the history and purpose of the rule announced require retroactive application; and (3) retroactively applying the overruling decision would produce injury or hardship.' " (*Casas* v. *Thompson*, *supra*, 42 Cal.3d at p. 140, citing *Chevron Oil Co.* v. *Huson* (1971) 404 U.S. 97, 106-107 [30 L.Ed.2d 296, 306, 92 S.Ct. 349].) The court concluded that all three factors favored a nonretroactive application of *McCarty*.

In so concluding, the court did not set forth an analysis of the first two factors, instead simply adopting the approach followed by the court in *In re Marriage of Sheldon* (1981) 124 Cal.App.3d 371 [177 Cal.Rptr. 380]. (*Casas* v. *Thompson*, *supra*, 42 Cal.3d at p. 140.) It was there found that *McCarty* effectively overruled consistent and well-settled California precedent. In addition, the objectives found by the *McCarty* court to support its interpretation of the law would not be particularly furthered by a retroactive, as opposed to prospective-only, application of that law. Those objectives were (1) to encourage members of the military to set aside a portion of their retired pay as an annuity for surviving spouses or dependent children, and (2) to promote a quality membership by providing inducements both to join and to retire from the military. As to the first objective, encouragement of

annuities, it was recognized that "[w]hile a purely prospective application of *McCarty* may have the effect of discouraging some already-divorced-but-not-yet-retired service members from electing to fund an annuity, the number of factors which must affect such a decision make the potential effect speculative at best." (*In re Marriage of Sheldon, supra,* 124 Cal.App.3d at p. 379.) In addition, it was recognized that the retroactive application of *McCarty* could further the second objective—ensurance of youthful and vigorous military forces—only to the slightest degree. Basically, the point was that the only persons who might be affected by the retroactive application of the *McCarty* decision would be those who were already members of the military (i.e., retroactive application could not induce anyone to join), and who had already divorced (thus being affected retroactively) but had not yet retired (and thus might choose not to retire). "Moreover, even as to those divorced members who have not yet retired, community property division of pension rights discourages retirement only to the extent the pension was actually divided in kind; if the nonservice member spouse received an offsetting award of other community property in exchange for the pension rights, . . . a failure to apply *McCarty* retroactively will not discourage retirement of that service member." (*In re Marriage of Sheldon, supra,* 124 Cal.App.3d at p. 379.)

Finding that the balance between the first two factors favored prospective-only application of *McCarty,* the California Supreme Court turned to the third factor: whether retroactive application would produce injustice and hardship. Noting that there is something to be said for stability and finality of decisions (and thus declining to reopen old dissolutions), the *Casas* court nonetheless held: "[T]he policy favoring equitable division of marital property outweighs that of stability and finality in the limited context of omitted assets. Moreover, [an action to partition] is an equitable one, permitting the court to consider any unjust or harsh result in making its award." (*Casas v. Thompson, supra,* 42 Cal.3d at p. 141.)

In summary, the *Casas* court found that prior to *McCarty,* military benefits were divided according to California law. *McCarty* held otherwise, but would not be applied retroactively to pre-*McCarty* dissolutions. FUSFSPA stated its own rules, but the rules applied only to dissolutions occurring after its effective date.

## C. *Appellant's Attack on the Casas Decision*

Appellant argues that *Casas* was wrongly decided. ■ We, of course, are not entitled to depart from the decision of a higher court, even were we to disagree with it. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57

Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Appellant's attack nonetheless merits some discussion.

■ Appellant asserts that *McCarty* correctly stated the federal law which existed at the time of that decision—and at the time of the instant dissolution. He argues that this law preempted state law and deprived the state courts of subject matter jurisdiction to divide military retirement benefits, and thus that *Casas* wrongly found that state courts could indeed apply community property principles to pre-*McCarty* dissolutions. In support of this argument, appellant cites a passage from the United States Supreme Court case of *Mansell* v. *Mansell* (1989) 490 U.S. 581 [104 L.Ed.2d 675, 109 S.Ct. 2023]: "Because pre-existing federal law, as construed by this Court, completely pre-empted the application of state community property law to military retirement pay, Congress could overcome the *McCarty* decision only by enacting an affirmative grant of authority giving the States the power to treat military retirement pay as community property." (*Id.* at p. 588 [104 L.Ed.2d at p. 684].) He argues that this passage effectively proclaims that *McCarty* must be applied retroactively, irrespective of the *Casas* decision. This argument rests on the premise that *McCarty* recognized that, absent special legislation, the courts lacked subject matter jurisdiction over military retirement benefits.

A preliminary issue is raised by appellant's "subject matter jurisdiction." Subject matter jurisdiction does not turn on the question of whether a state court should apply federal rather than state law to the division of military retirement benefits, but whether the state court has jurisdiction to address the question of military retirement benefits *at all*. A state court would lack subject matter jurisdiction over military retirement benefits only if it lacked the power to consider their character at all. That is not the situation. As found by the California Court of Appeal upon *Mansell* v. *Mansell*'s remand, "Neither in *McCarty* nor in *Mansell* v. *Mansell* did the Supreme Court refer to subject matter jurisdiction over retirement or disability pay. Indeed, the *McCarty* court characterized the question before it, not as whether a state court had jurisdiction to divide military retirement benefits, but rather whether it could do so pursuant to state, rather than federal, law. (*McCarty*, *supra*, 453 U.S. at p. 211 [69 L.Ed.2d at p. 593].) The holding in *McCarty* that federal law preempted state law in this area simply meant that state courts were bound to apply federal law in determining the character of military pension benefits. There was no divestiture of jurisdiction." (*In re Marriage of Mansell* (1989) 217 Cal.App.3d 219, 228 [265 Cal.Rptr. 227].)[4]

---

[4]The case law often employs the term "jurisdiction" in different ways. For example, the *Casas* court considered the argument that a "divorce court in 1966 lacked jurisdiction" to divide the military retirement benefits. (*Casas* v. *Thompson*, *supra*, 42 Cal.3d at p. 140.) In

It follows that, at least insofar as *Mansell* v. *Mansell* states the law, it does not hold that California's superior courts lack *subject matter jurisdiction* over military retirement benefits in pre-*McCarty* dissolutions. The result here is that *Mansell* does not support a claim that the superior court's order was void. *Mansell* v. *Mansell* may or may not stand for the proposition that the superior court acted in excess of its jurisdiction (i.e., its *power*), but it does not require a finding that the November 1990 order was void as having been entered without subject matter jurisdiction. This being true, John Curtis's failure to appeal from the November 1990 order precludes his instant attack on that order.

We note, however, another flaw in appellant's argument. He presumes that the *Casas* court rejected the conclusion drawn by the court in *McCarty* —which subsequently was reaffirmed by the court in *Mansell*. It did not. It simply declined to afford *McCarty* retroactive recognition. Appellant's argument embraces exactly that philosophical approach rejected by the *Casas* court: that *McCarty* simply "found" existing law which then had to be followed whether or not *McCarty* itself was applied retroactively. As discussed above, the *Casas* court held that although in a sense an overruling decision "defines" existing law, it also in a sense "creates" the law. **(4)** In any event, " 'the law is nevertheless clear: a state court has power to give an overruling decision prospective application only.' " (*Casas* v. *Thompson*, *supra*, 42 Cal.3d at p. 140, fn. 3.) We do not see that the *Mansell* court's recognition that *McCarty* found that federal law preempted the application of community property law to military retirement pay (a point accepted by the *Casas* court), requires the conclusion that *McCarty* be given retroactive effect.

John Curtis also claims that "Congress has repeatedly emphasized that FUSFSPA may not be used to re-open final judgments that did not divide military retirement pay as community property." To the extent that this argument presumes that *Casas* held that FUSFSPA authorized the opening of old cases, it again misstates the Supreme Court's decision. FUSFSPA regulates post-*McCarty* dissolutions. The *Casas* court found that pre-*McCarty* (i.e., *Fithian*) law governed pre-*McCarty* dissolutions. In other words, *Casas*, and following decisions, do not use FUSFSPA as authority to reopen old decisions. Unless and until Congress expressly prohibited such a procedure, FUSFSPA—which by its terms regulated only dissolutions occurring after June 1981—was simply inapplicable.

---

context, the court was not concerned with whether a state court had subject matter jurisdiction over the benefits—that conclusion was never in question—but whether the court had acted in excess of its power. (See *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 287-291 [109 P.2d 942, 132 A.L.R. 715], for a discussion of the various meanings which have been attributed to the term "jurisdiction.")

In a related argument, he complains that the California Supreme Court in determining the intent of FUSFSPA mistakenly relied on Senate Report No. 97-502 to determine that *McCarty* was not retroactive.[5] As *Casas*'s determination of *McCarty*'s nonretroactivity had nothing to do with FUSFSPA, it does not matter that it may have considered a report which was only indirectly relevant.[6]

■ It should, however, again be emphasized that these arguments, even if meritorious, would not require reversal of the November 1990 order. The arguments do not establish that the superior court lacked subject matter jurisdiction over the pre-*McCarty* military retirement benefits. They do not establish that the November 1990 order was void, and thus they do not establish any right in John Curtis to levy a collateral attack against that order.

### D. The Effect of 1990 Amendments to FUSFSPA on the Division of Military Retirement Benefits

■ Appellant argues that even if this court follows *Casas*, it must find that the superior court's order was void because 1990 amendments to FUSFSPA deprived it of subject matter jurisdiction over John Curtis's benefits. FUSFSPA was amended effective November 5, 1990—i.e., four days *after* the trial court here found that it had the power to reopen the 1978 dissolution and divide John Curtis's military retirement benefits. Prior to that date, 10 United States Code section 1408(c)(1) provided: "Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981 [i.e., post-FUSFSPA], either as property solely of the member or as property of

---

[5]Appellant points out that Senate Report No. 97-502 is a report on Senate Bill No. 1814, which was never adopted. FUSFSPA was directly developed from Senate Bill No. 2248.

[6]*Casas* considered Senate Report No. 97-502 in deciding the extent to which courts involved in post-FUSFSPA dissolutions could apply state law in classifying military retirement benefits. The husband in that case had argued that *McCarty* held that state law was preempted by federal law and that state courts therefore could apply their own laws only to the extent that FUSFSPA expressly limited that preemption. The *Casas* court found that *McCarty* determined only that there was an implied federal preemption of state law; i.e., that there was an absence of express preemption, but that the objectives behind military retirement pay would be damaged by application of state marital law principles to that asset. The court then found that with FUSFSPA, Congress had redefined the relevant objectives. As these objectives would not be damaged by application of state law, implied preemption was no longer an issue. It followed that the states did not need an express congressional recognition of their power to apply state law in order to overcome federal preemption; there simply was no federal preemption, except and to the extent the FUSFSPA affirmatively so established. The *Casas* court's analysis of FUSFSPA as destroying implied preemption rather than creating limited exceptions to preemption is interesting, but it relates only to post-FUSFSPA dissolutions and thus, whether or not correct, is not relevant here.

the member and his spouse in accordance with the law of the jurisdiction of such court." FUSFSPA contained no provisions relating to the division of military retirement pay which became payable prior to June 25, 1981. As has been discussed above, California took the position that benefits which had become payable prior to the enactment of FUSFSPA, would also be divided in accordance with state law principles (because *McCarty* would not be applied retroactively).

The November 5, 1990, amendment was directed toward pre-FUSFSPA benefits. Thus, 10 United States Code section 1408(c)(1) now provides:

"Subject to the limitations of this section, a court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court. *A court may not treat retired pay as property in any proceeding to divide or partition any amount of retired pay of a member as the property of the member and the member's spouse or former spouse if a final decree of divorce, dissolution, annulment, or legal separation (including a court ordered, ratified, or approved property settlement incident to such decree) affecting the member and the member's spouse or former spouse (A) was issued before June 25, 1981, and (B) did not treat (or reserve jurisdiction to treat) any amount of retired pay of the member as property of the member and the member's spouse or former spouse.*" (Italics added.)

The amendment is curious. Congress apparently has decided that military retirement benefits should be classified according to state law. Congress, moreover, was enough concerned about the matter as to make FUSFSPA itself retroactive to the day before *McCarty*—an action which indicated that Congress was unhappy with that decision's interpretation of federal law. Recognizing that public policy considerations favor permitting the states to define a nonmilitary spouse's interest in military retirement benefits, Congress nonetheless seems to have decided that state marital property laws should not benefit older and less ably advised or represented nonmilitary spouses. Although we question the rationale of Congress's decision, we finally agree with appellant on the issue of subject matter jurisdiction. The amendment in fact deprives state courts of subject matter jurisdiction to open pre-*McCarty* dissolutions for the purposes of dividing military retirement benefits. From November 5, 1990, forward, a state court may not reopen a pre-1982 dissolution in order to divide omitted military retirement benefits.

It does *not* follow, however, that a court which reopened a case prior to November 5, 1990, lacked subject matter jurisdiction over the proceedings

or benefits. The 1990 amendment was enacted as part of Public Law No. 101-510. Section 555, subdivision (e) of Public Law No. 101-510 states the effective dates of the amendment, providing:

"(1) The amendment made by subsection (a) [title 10 United States Code 1408 (c)(1), at issue here, and quoted above] shall apply with respect to judgments issued before, on, or after the date of the enactment of this Act. ▇▇▇▇▇▇ *In the case of a judgment issued before the date of the enactment of this Act, such amendment shall not relieve any obligation, otherwise valid, to make a payment that is due to be made before the end of the two-year period beginning on the date of the enactment of this Act.*"[7] (Italics added.)

Congress accordingly recognized that some judgments had been reopened prior to the 1990 amendments, and that courts in such cases had ordered the military spouse to pay a portion of his or her retirement benefits to the nonmilitary spouse. Although the amendments are intended to affect all orders, Congress apparently intended to protect the already-vested interest of nonmilitary spouses by establishing a two-year period during which the disfavored payments might nonetheless be made. ▇▇▇▇▇▇ Accordingly, although as of the effective date of section 555 of Public Law No. 101-510, courts are deprived of the subject matter jurisdiction to reopen pre-1982 dissolutions, where such a dissolution was reopened before that effective date, obligations, "otherwise valid, to make a payment that is due to be made before the end of the two-year period beginning on the date of the enactment of this Act"; i.e., before November 5, 1992, will be honored.[8]

▇▇▇ Our analysis, however, has not ended. There are two "obligations" at issue in the present case. First, there is the continuing obligation to divide present and future military retirement benefits. ▇▇▇▇▇▇▇ There

---

[7] The use of the term "judgment" in section 555 is somewhat ambiguous. In context, however, it refers to judicial determinations that a pre-*McCarty* judgment should be reopened. The amendment intends to regulate such determinations, whether they be deemed judgments or orders.

[8] Virginia Curtis petitioned the court to reopen the matter in October 1990. The matter was argued on November 1, and on November 2 the court issued a minute order awarding a portion of John Curtis's military retirement benefits to her. On petition for rehearing, John Curtis argued that the trial court was without jurisdiction to make such a ruling because, although the minute order was issued prior to November 5, the formal, written order, was not filed until November 20.

Appellant has confused the date of entry of judgment for purposes of filing an appeal (see Cal. Rules of Court, rule 2) with issues of jurisdiction to act. The point here is not the date at which the order was entered, but whether the court had jurisdiction over the cause as of the date it issued its order. The court reopened the old dissolution action no later than November 1, when it heard the matter. Any order issued after that date was within its jurisdiction.

appears to be no question but that Virginia Curtis's entitlement to those benefits will end on November 5, 1992, as any further payment would be a payment becoming due after and outside of the two-year period.[9] Second, however, and more problematic, is the obligation to pay $83,038 representing past retirement benefits. A strict reading of section 555 of Public Law No. 101-510 would mean that that obligation could be collected only if payment of it became due prior to November 5, 1992. We do not think Congress intended such a result. Under this interpretation, a state court which had determined that a nonmilitary spouse has a right to past benefits would have to protect that right by ordering the military spouse to pay it prior to November 5, 1992. Such an order could result in great hardship to exactly that class of persons the 1990 amendments seek to protect: military retirees, who would then have to raise relatively large amounts of money in a relatively short period of time. The better interpretation, and the one which we adopt here, is that section 555 does not intend to disturb a preamendment order which established an interest in past retirement benefits. This interpretation, moreover, is consistent with a main object of 10 United States Code section 1408, which is to provide a mechanism by which the nonmilitary spouse can obtain direct payment of future retirement benefits as they become due. The "obligation" at issue in FUSFSPA ordinarily is the court-ordered obligation of the service secretary to pay a portion of the military retirement benefits to the nonmilitary spouse. This is the obligation affected by the 1990 amendments. Other obligations—such as the military spouse's obligation to pay a portion of benefits already received, are unaffected by the two-year provision.

In summary, we find that the 1990 amendments to FUSFSPA refer to orders or judgments reopening pre-*McCarty* dissolutions, whether those orders or judgments were issued "before, on or after" November 5, 1990. After November, 5, 1990, state courts may not reopen pre-*McCarty* dissolutions; they lack subject matter jurisdiction to do so. An order to reopen

---

[9]It should be noted that the court in *Casas* v. *Thompson*, *supra*, distinguished between "characterizing" military retirement benefits in accordance with state marital property laws and "treating" such benefits in accordance with state marital property laws. The court held, essentially, that FUSFSPA did not alter the ability of the state courts to characterize military retirement benefits as community property, but did limit the courts' ability to order the service secretary to direct the military retiree's pay. In other words, a court can establish that a military retiree owes his or her spouse a specified percentage of gross benefits. Although that obligation can be satisfied in other ways, the service secretary can be directed to pay no more than a FUSFSPA-specified amount directly to the nonmilitary spouse. (42 Cal.3d at pp. 147-151.) It is now clear that Congress intends the term "treat" to mean "exercise jurisdiction over." Thus, the legislative history accompanying the passage of Public Law No. 101-510 complained that state courts have been reopening pre-*McCarty* cases, a result not intended by Congress in enacting FUSFSPA, and declared unequivocally that the intent of the new legislation was to prevent any future reopenings. In light of this statement of legislative purpose, the term "treat" carried over into the 1990 amendments must be intended to mean more than "direct the service secretary to pay." It acts as a limitation on subject matter jurisdiction.

which was issued prior to November 5, 1990, is given limited effect. To the extent that the order provided that a portion of military retirement benefits be made to the nonmilitary spouse as they become payable to the military spouse, that order will be given effect up to November 5, 1992. No payment of future retirement benefits will be made pursuant to such an order after November 5, 1992. The amendments do not disturb any finding in such proceedings that the military spouse owes a portion of past benefits to the nonmilitary spouse, nor do the amendments place any limitation on the court's power to order payment of those past benefits in such manner as the court deems proper. In the present case, then, the superior court had subject matter jurisdiction to reopen the parties' dissolution. It had, and has, the power to order payment of a percentage of past benefits. It had, and has, the power to order payment of future benefits. Virginia Curtis, however, will not be entitled to receive any percentage of John Curtis's benefits as become payable to him after November 5, 1992. For practical purposes these findings also mean that John Curtis is precluded from attacking any matter determined in the November 1990 order, other than that Virginia Curtis was entitled to future benefits payable after November 5, 1992. The trial court had subject matter jurisdiction over the cause, the order was not void, and John Curtis's failure to appeal from it forecloses his right to complain of matters adjudicated therein.

III.

*Appellant's Remaining Arguments Lack Merit**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

IV.

CONCLUSION

The order is affirmed.

Strankman, P. J., and Dossee, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 3, 1992.

---

*See footnote, *ante*, page 1.