Filed 6/9/25  P. v. Thompson CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>GREGORY PIERRE THOMPSON, JR.,<br><br>        Defendant and Appellant. | G063283<br><br>(Super. Ct. No. FBA1300235)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of San Bernardino County, Miriam Ivy Morton, Judge. Judgment affirmed in part and reversed and remanded with directions in part.

Cindy Brines, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

\*      \*      \*

Gregory Pierre Thompson, Jr., was convicted of the murder of Darnell Cleveland and the attempted murder of Devontea Cole. Thompson raises the following claims on appeal: (1) the evidence was insufficient to support the findings that the murder and attempted murder were willful, premeditated, and deliberate; (2) the trial court erred in admitting extensive gang evidence; (3) the prosecution committed misconduct by eliciting evidence he was a gang member; (4) the prosecution committed misconduct by improperly describing premeditation and deliberation; (5) his sentence on count 2 must be modified to reflect the statutory punishment; (6) he is entitled to a limited remand pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*); and (7) the restitution fine violates the prohibition against ex post facto laws.

The Attorney General concedes Thompson's sentence on count 2 should be modified to reflect the proper statutory punishment. We agree and reverse and remand to the trial court to modify Thompson's sentence. On remand, we also direct the court to conduct a *Franklin* proceeding at Thompson's request. We otherwise affirm the judgment.

FACTS

A. *Cole Identifies a Gang Member in a Prior Shooting*

In early 2013, Anthony Mosby, a member of the Tre Roc Mafia gang, was in the front passenger seat and Cole was in the back seat of a car which pulled up to a bus stop where two people were waiting for a bus. Mosby

2

asked, "Where are you from, cuz?" Mosby then fired a handgun out the window, striking one of the people.

Cole later identified Mosby as the bus stop shooter. As a result, Cole, a member of the West Side Village Park gang, was beaten up for snitching and kicked out of the gang. A police officer who investigated the bus stop shooting testified that snitching is taken very seriously in gang culture and could lead to serious consequences such as physical injury or death.

B. *Shooting of Cole and Cleveland*

1. Prosecution's Case-in-Chief

Two months after the bus stop shooting, M.T. had a party at her house, which included her best friend Cleveland and Cleveland's friend Cole. Thompson, who M.T. had known for about a year, eventually arrived at the party uninvited. Thompson asked M.T. why she allowed a snitch in her house. Thompson told M.T. he was supposed to shoot up her house because of the snitch she let in, but she told him her children were there and to take it outside. Thompson went outside, and M.T. could see he was on his phone.

M.T. told Cleveland that Thompson told her there was a snitch at her house but she did not know who it was. When M.T. went outside, Thompson again stated he was supposed to be "shooting it up" because someone had snitched, which caused his "big homie" to be locked up. Thompson said the snitch was from the "Vill."

Cleveland then walked outside and asked Thompson who the snitch was, but Thompson did not answer. Cole came outside and stated there were no snitches there. Thompson then pulled out a gun and started shooting. M.T. did not see Cleveland or Cole with a gun. M.T. ducked to avoid being hit. When she got up, she saw Cleveland and Cole lying on the ground. Thompson fled.

3

Other witnesses, including Cleveland's brother E.F., stepbrother J.D., and sister R.H., also testified Thompson had stated there was a snitch at the party. They all heard gunshots and ran outside to see Cleveland and Cole had been shot. They testified they did not see Cleveland or Cole with a gun.

When police arrived, they saw Cleveland on the ground with a gunshot wound to the chest and Cole standing in the driveway with a gunshot wound to the leg. Paramedics attempted to treat Cleveland, but he was already dead. None of the officers saw any guns in the area.

Police found Thompson a few blocks away, carrying a gray backpack, which matched witnesses' descriptions. Thompson jumped into the passenger seat of a truck parked on the street. After ordering Thompson out of the truck, police arrested him. Police found Thompson's gray backpack in the truck, as well as an LG cell phone belonging to Thompson in the front passenger side door pocket.

The driver of the truck, J.M., testified Thompson had called him for a ride. When Thompson had gotten into the car, he appeared nervous and was carrying a black revolver. J.M. asked for the gun and Thompson gave it to J.M., who put it between his legs. Thompson told J.M. he "finally got" the person who was "messing with a family member." The police recovered a Taurus .357 Magnum revolver from the truck.

Police searched the back alley from where Thompson had run and discovered four fired cartridge casings and one live .357 bullet. Examination of the cartridges and bullet indicated they had been fired from a Taurus revolver.

A criminalist testified he received a gunshot residue kit for Cleveland and Thompson. Three residue particles were found on Thompson's

4

right hand and four particles on his left hand. One particle was found on Cleveland's left hand.

## 2. Cole's Testimony

Cole, who went by the gang moniker "Taz," was a member of West Side Village Park gang. Cole sought to take the blame for the shooting by testifying he shot first at Thompson, who then fired back in self-defense. Cleveland then fired a gun at Thompson. The prosecution's gang expert testified that, if Cole, a snitch in the bus stop shooting, "took the blame off" Thompson by testifying falsely at trial, Cole would gain protection from future retribution by the Tre Roc Mafia gang.

## 3. Defense Case

Thompson testified in his own defense. He stated he did not know Cole and Cleveland would be at M.T.'s house and was surprised to see M.T. was having a party. Thompson denied saying anything about snitches to M.T. As he turned to leave, Cole and Cleveland approached him. Cole asked him, "Do we have an issue?" Thompson told Cole he had no idea what he was talking about and did not know anything about a snitch. When Thompson walked out of the house, Cole and Cleveland followed him. After Cole fired his gun at Thompson, he shot back at Cole and Cleveland in self-defense.

On cross-examination, Thompson was asked about a recorded telephone conversation he had with Mosby while in custody, approximately one week after the shooting, in which he told Mosby, "I got the phone call to knock out Taz."

## C. Procedural History

A jury found Thompson guilty of willful, deliberate, and

5

premeditated murder (Penal Code[1] § 187, subd. (a); count 1) and willful, deliberate, and premeditated attempted murder (§§ 664, 187, subd. (a); count 2). The jury also found true various firearm allegations (§ 12022.53, subds. (b), (c), (d)) as to both counts 1 and 2.

The trial court sentenced Thompson to a total term of 82 years to life, consisting of 25 years to life on count 1 and 7 years to life on count 2, plus 25 years to life for the firearm enhancements on each of counts 1 and 2. Thompson was required to pay $300 in restitution (§ 1202.4, subd. (b)).

DISCUSSION

I.

SUFFICIENCY OF THE EVIDENCE

Thompson contends the evidence was insufficient to support the jury's findings the murder of Cleveland and the attempted murder of Cole were willful, deliberate, and premeditated. He argues the shootings were unplanned and instead occurred during the heat of the moment when he unexpectedly encountered Cleveland and Cole. We conclude the evidence was sufficient and affirm the convictions.

A.  *Applicable Law*

"A verdict of deliberate and premeditated first degree murder requires more than a showing of intent to kill." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1080.) "'Deliberation' refers to careful weighing of considerations in forming a course of action; 'premeditation'" means thought over in advance." (*Ibid.*) "'[A]ttempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

6

the intended killing.'" (*People v. Smith* (2005) 37 Cal.4th 733, 739.)

A first degree murder or attempted murder is premeditated and deliberate when it occurs "as the result of preexisting thought and reflection rather than unconsidered or rash impulse." (*People v. Stitely* (2005) 35 Cal.4th 514, 543.) "Premeditation and deliberation do not require an extended period of time, merely an opportunity for reflection." (*People v. Cook* (2006) 39 Cal.4th 566, 603 (*Cook*).) "'The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . .'" (*People v. Mayfield* (1997) 14 Cal.4th 668, 767, overruled on other grounds in *People v. Scott* (2015) 61 Cal.4th 363, 390, fn. 2.)

Appellate courts typically rely on the following evidence to determine the sufficiency of the evidence to sustain findings of premeditation and deliberation: "(1) planning activity, (2) motive, and (3) manner of killing." (*People v. Perez* (1992) 2 Cal.4th 1117, 1125 (*Perez*).) These factors, "while helpful for purposes of review, are not a sine qua non to finding first degree premeditated murder [or attempted murder], nor are they exclusive." (*Ibid.*) However, "[w]hen the record discloses evidence in all three categories, the verdict generally will be sustained." (*People v. Proctor* (1992) 4 Cal.4th 499, 529.) In conducting this analysis, we draw all reasonable inferences necessary to support the judgment. (*Perez*, *supra*, at p. 1124.)

B. *Standard of Review*

"When an appellant challenges the sufficiency of the evidence to support a conviction, the appellate court reviews the entire record to see ""'whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.'"'"(*People v. Cochran* (2002) 103

7

Cal.App.4th 8, 12–13 (*Cochran*), disapproved on other grounds in *People v. Soto* (2011) 51 Cal.4th 229, 248, fn. 12.) "We view the facts in the light most favorable to the judgment, drawing all reasonable inferences in its support." (*Cochran*, at p. 13.) "The test on appeal is not whether we believe the evidence established the defendant's guilt beyond a reasonable doubt, but whether ""any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."""" (*Ibid.*)

"Review on appeal of the sufficiency of the evidence supporting the finding of premeditated and deliberate murder [or attempted murder] involves consideration of the evidence presented and all logical inferences from that evidence . . . ." (*Perez*, *supra*, 2 Cal.4th at p. 1124.) "'[I]t is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.'" (*Ibid.*)

C. *Analysis*

The evidence adduced at trial was sufficient to demonstrate both the murder and attempted murder were premeditated and deliberate. First, the evidence showed planning activity. Thompson brought a .357 revolver fully loaded with hollow point rounds to M.T.'s party. (*People v. Villegas* (2001) 92 Cal.App.4th 1217, 1224 (*Villegas*) [defendant's act of carrying a loaded gun at the time of the shooting was evidence of prior planning].) After arriving at the party, Thompson complained to M.T. that she had invited a "snitch," who had caused his "big homie [to get] locked up," and that he therefore had to "shoot up" M.T.'s house. After Thompson later walked outside, with Cleveland and Cole following, demanding to know who the

8

snitch was, Thompson pulled out the loaded gun from his backpack and shot four times in close succession.

Second, there was sufficient evidence of Thompson's motive in shooting Cleveland and Cole. The jury heard Thompson's recorded telephone call to Mosby a week after the shooting in which Thompson told Mosby he had been told to "knock out" Cole because Cole had allegedly snitched on Mosby regarding the earlier bus stop shooting. Thompson's friend J.M. also testified Thompson told him directly after the shooting that he "finally got" the person who was "messing with a family member." This evidence was in addition to M.T.'s testimony that Thompson told her before the murder that he had to shoot up her home because someone at the party had snitched on his homie.

Third, the manner of killing supports a finding of premeditation and deliberation. In addition to demonstrating planning activity, the act of bringing a loaded gun is evidence of premeditation and deliberation. (*People v. Lee* (2011) 51 Cal.4th 620, 636 [finding of premeditation and deliberation upheld where, inter alia, "defendant brought a loaded handgun with him on the night [of the killing], indicating he considered the possibility of a violent encounter"].) After pulling out a loaded gun, Thompson shot at Cleveland and Cole four times in quick succession and at close range, striking them both. (*Villegas, supra*, 92 Cal.App.4th at p. 1225 [noting "'the act of firing toward a victim at a close, but not point blank, range "in a manner that could have inflicted a mortal wound had the bullet been on target is sufficient to support an inference of intent to kill . . . .""'].) After shooting the victims, Thompson immediately fled, discarding the used shell casings, and attempting to evade police, which demonstrates a guilty conscience. (*People v. Batey* (1989) 213

9

Cal.App.3d 582, 586 [holding evidence of defendant fleeing crime scene is relevant to show consciousness of guilt].)

Accordingly, the evidence was sufficient to support the jury's findings the murder and attempted murder were premeditated and deliberate.

II.

ADMISSION OF GANG EVIDENCE

Thompson argues the trial court erred in admitting extensive prejudicial gang evidence, particularly because there were no gang charges or enhancements. He contends the admission of the gang evidence violated his right to due process and a fair trial because it lowered the prosecution's burden of proof. We conclude the gang evidence, although extensive, was relevant to the issues of motive and premeditation and deliberation and did not violate Thompson's right to due process and a fair trial. Even assuming the trial court erred in admitting some of the gang evidence, any alleged error was harmless given the substantial evidence of Thompson's guilt.

A. *Factual Background*

The prosecution sought to introduce gang evidence as proof of Thompson's motive and state of mind, pursuant to Evidence Code section 1101, subdivision (b). Defense counsel objected "to any evidence of gangs coming in at this point in time." The trial court permitted introduction of evidence of Thompson's, Cleveland's, and Cole's gang ties. The trial court further determined that, during its opening statement, the prosecution could say Thompson was associated with gang members but not that he was or is a gang member. Any further references to Thompson's involvement in a gang would depend on the evidence adduced at trial.

10

A gang expert testified regarding gang culture, including territory, colors, hand signs, respect, gang challenges, committing crimes, and putting in work. The expert explained various hand signs Thompson made in photographs discovered on his cell phone, as well as the spelling of certain words in letters found in Thompson's backpack, noting they were associated with the Tre Roc Crip Mafia gang.

In addition to the expert witness, the prosecution solicited the testimony of four officers from the Barstow Police Department, including the officer who investigated the bus stop shooting, a gang officer, and two police officers. The officer who investigated the bus stop shooting testified he knew Mosby to be a gang member with the moniker "Tone." He also testified about snitching in gang culture. The gang officer testified he was familiar with Cole and knew him to be a West Side Village Park gang member. The two other police officers testified they had prior contacts with Cole and were aware he was a gang member.

## B. Applicable Law

"[E]vidence that a person committed a crime, civil wrong, or other act," is admissible "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence of mistake . . .) other than his or her disposition to commit such an act." (Evid. Code § 1101, subd. (b).) The trial court has discretion to exclude relevant evidence "if its probative value is substantially outweighed" by the possibility of a "substantial danger of undue prejudice." (*Id.*, § 352.)

The prosecution is generally "entitled to 'introduce evidence of gang affiliation and activity where such evidence is relevant to an issue of motive or intent.'" (*People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1550 (*Gonzalez*).) "[E]ven where gang membership is relevant," however, "because

11

it may have a highly inflammatory impact on the jury, trial courts should carefully scrutinize such evidence before admitting it." (*People v. Williams* (1997) 16 Cal.4th 153, 193.) On the other hand, "'[b]ecause a motive is ordinarily the incentive for criminal behavior, its probative value generally exceeds its prejudicial effect, and wide latitude is permitted in admitting evidence of its existence.'" (*Gonzalez*, at p. 1550.)

## C. Standard of Review

"On appeal, we review for abuse of discretion a trial court's ruling on whether evidence is relevant, not unduly prejudicial, and thus admissible." (*People v. McKinnon* (2011) 52 Cal.4th 610, 654.) "'[T]he trial court is vested with wide discretion in determining relevance and in weighing the prejudicial effect of proffered evidence against its probative value. Its rulings will not be overturned on appeal absent an abuse of that discretion.'" (*People v. Hardy* (2018) 5 Cal.5th 56, 87; *People v. Williams* (2008) 43 Cal.4th 584, 634-635 [holding that "a trial court's discretionary ruling under [Evidence Code, section 352] '"must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice"'"].)

## D. Analysis

### 1. The Evidence Was Properly Admitted

Here, the gang evidence was relevant because it explained Thompson's motive for shooting Cleveland and Cole, which was to punish Cole for snitching on Mosby. It also established the premeditation and deliberation required to prove murder and attempted murder. The evidence Cole was a gang member was also relevant to explaining why he testified falsely that he shot at Thompson first, i.e., to protect himself from further gang retaliation.

Thompson has failed to demonstrate the gang evidence was improperly admitted. Thompson himself concedes some of the gang evidence was relevant to prove motive. Although he argues the gang evidence was "extensive and cumulative," he fails to pinpoint which specific witness or witnesses should have been excluded or identify with any precision what particular testimony was unduly excessive or prejudicial.

Although the gang evidence was certainly damaging, we cannot say on this record that it was unduly prejudicial. (*People v. Chhoun* (2021) 11 Cal.5th 1, 29 [""'In applying section 352, "prejudicial" is not synonymous with "damaging."'""].) The trial court limited the prejudicial nature of the evidence by prohibiting the prosecution from arguing Thompson was a gang member, while still admitting evidence the victims, Cleveland and Cole, were in a gang.

Thompson also argues the trial court's error in admitting the large quantity of gang evidence was so serious as to violate due process and his right to a fair trial. But the admission of evidence, even if erroneous under state law, results in a due process violation only if it makes the trial "'fundamentally unfair.'" (*Estelle v. McGuire* (1991) 502 U.S. 62, 67; *People v. Falsetta* (1999) 21 Cal.4th 903, 913.)

Here, although the testimony of the gang expert and other police officers constituted a significant portion of the prosecution's case-in-chief, it was far from the primary evidence of Thompson's guilt. For example, M.T. testified Thompson told her he was going to "shoot up" her house because there was a snitch there who had caused his "big homie [to get] locked up." Multiple witnesses, including M.T, E.F., J.D., and R.H., testified they either saw Thompson shoot Cole and Cleveland or heard gunshots and immediately ran outside to find the victims had been shot. These witnesses all stated

13

neither Cleveland nor Cole had a gun. The witnesses also testified Thompson fled, wearing a gray backpack. Officers responding to the shooting found Thompson in a nearby alley, wearing a gray backpack. J.M. testified that, after Thompson got into J.M.'s truck, he told J.M. he had shot someone and gave J.M. the gun he was holding. After police arrested Thompson, they recovered the .357 caliber gun in the truck. Police also recovered shell casings in the alley, matching the .357 caliber weapon.

This evidence was sufficient to demonstrate Thompson's guilt absent the gang evidence. Therefore, the admission of the gang evidence did not render Thompson's trial so "fundamentally unfair" as to violate his federal rights to due process or a fair trial.

2. Any Error Was Harmless

We are not convinced the trial court erred in admitting the gang evidence as it was relevant for the reasons discussed. However, even assuming the court abused its discretion under Evidence Code section 352, any error was harmless. "Absent fundamental unfairness, state law error in admitting evidence is subject to the traditional" test under *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Partida* (2005) 37 Cal.4th 428, 439.) The reviewing court must ask whether it is reasonably probable the verdict would have been more favorable to the defendant absent the error. (*People v. Earp* (1999) 20 Cal.4th 826, 878; *Watson*, at p. 836.)

Here, there was substantial eyewitness and physical evidence linking Thompson to the crime, as well as evidence regarding Thompson's motive for shooting Cole and Cleveland. It is not reasonably likely the outcome of trial would have been different absent admission of the gang evidence, and any error was therefore harmless.

14

## PROSECUTION'S USE OF GANG EVIDENCE

Thompson argues the prosecutor committed misconduct by eliciting evidence he was a gang member, contrary to the trial court's pretrial ruling the prosecution could only show he was associated with gang members. We disagree.

### A. *Relevant Law*

"'Prosecutorial misconduct requires reversal when it "so infect[s] a trial with unfairness [as to] create a denial of due process. [Citations.] Conduct by a prosecutor that does not reach that level nevertheless constitutes misconduct under state law, but only if it involves the use of deceptive or reprehensible methods to persuade the court or jury."'" (*People v. Peterson* (2020) 10 Cal.5th 409, 465.)

### B. *Waiver*

The defendant must object to the prosecutor's misconduct and request "'the jury be admonished to disregard the impropriety.'" (*People v. Stanley* (2006) 39 Cal.4th 913, 952.) "When a defendant believes the prosecutor has made remarks constituting misconduct during argument, he or she is obliged to call them to the court's attention by a timely objection. Otherwise no claim is preserved for appeal." (*People v. Morales* (2001) 25 Cal.4th 34, 43–44 (*Morales*).) However, the defendant's failure to object "may be excused if it would have been futile or an admonition would not have cured the harm." (*People v. Dykes* (2009) 46 Cal.4th 731, 760.)

Although defense counsel made a general objection at the pretrial hearing to any gang evidence being admitted, there were no individual objections nor any request for the trial court to admonish the jury to disregard the gang evidence. Nor has Thompson posited any reason why a

request for admonishment would not have cured the harm. The claim is therefore waived. (*Morales, supra*, 25 Cal.4th at pp. 43–44.)

*C. Analysis*

Even if this claim had not been waived, it lacks merit. There was no prosecutorial misconduct because the prosecutor complied with the trial court's pretrial order prohibiting arguing Thompson was a gang member in opening statement. Rather, the evidence adduced at trial merely established Thompson had gang ties, not that he himself was a gang member. Although the gang expert testified regarding Thompson's gang ties, including photographs and letters, he did not opine that Thompson was a gang member. When specifically queried by defense counsel, the gang expert testified law enforcement had not documented Thompson as a gang member. Thompson testified in his own defense that he was a member of the Duce Blocc Young Thugs, but the Thugs were not a criminal street gang.

Moreover, even if the prosecutor's actions constituted misconduct, any error was harmless. Prosecutorial misconduct can result in reversal under state law if there was a "reasonable likelihood of a more favorable verdict in the absence of the challenged conduct" and under federal law if the misconduct was not "harmless beyond a reasonable doubt." (*Cook, supra*, 39 Cal.4th at p. 608.) Given the substantial evidence against Thompson, it is not reasonably likely the outcome at trial would have been different even if the prosecutor had not introduced the gang evidence. Accordingly, we reject Thompson's claim of error.

IV.

PROSECUTION'S COMMENTS REGARDING PREMEDITATION AND DELIBERATION

Thompson contends the prosecutor engaged in prejudicial misconduct by improperly explaining premeditation and deliberation to the

16

jury in closing argument by analogizing it to the determination whether to stop at a yellow light. He argues comparing the premeditation and deliberation necessary to find a defendant guilty of murder to the quotidian decision whether to drive through a yellow light diminished the prosecution's burden of proof. We find no error.

*A. Factual Background*

In closing argument, the prosecutor explained the standards for determining premeditation and deliberation as follows:

"Easily broken down, willful just means intended to kill. Deliberate, just weighing considerations for and against to kill, premeditated, deciding to kill before completing the act.

"Now, the length of time is not the . . . end all be all. It's not something rash or impulsive, but a cold, calculated decision to kill can be made quickly. This isn't a perfect equivalent, but it's a helpful analogy.

"Willful, deliberate, premeditated, like driving towards a stoplight. The light turns yellow, and you have a few seconds to act. And in those few seconds you're thinking. You're thinking, can I make this light? Do I know this light? Is it particularly, say, a yellow for a long time? Are there any cops around? Is there anyone behind me? Can I make it? All those thoughts happen in a few seconds. You think about it. You make a decision on it."

Defense counsel neither objected to the prosecutor's statements nor requested a curative instruction. The trial court instructed the jury with CALCRIM No. 521, which defined the deliberation and premeditation necessary to support a murder conviction.

17

*B. Applicable Law*

When a claim of prosecutorial misconduct "focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*Morales*, *supra*, 25 Cal.4th at p. 44.) It is considered misconduct to misstate the law to the jury, and bad faith is not required. (*People v. Centeno* (2014) 60 Cal.4th 659, 666.) "But a prosecutor is allowed to vigorously argue the case and is afforded 'significant leeway' in discussing the facts and the law in closing argument." (*People v. Azcona* (2020) 58 Cal.App.5th 504, 516.)

*C. Waiver*

Defense counsel must object to alleged prosecutorial misconduct and request a curative instruction to avoid waiver of the claim. (*Morales*, *supra*, 25 Cal.4th at pp. 43–44.) Here, defense counsel failed to object or request a curative instruction. Nor has Thompson posited any reason why a request for admonishment would not have cured any alleged harm. Therefore, the claim is forfeited.

*D. Analysis*

Even assuming the claim were not waived, it lacks merit. Our Supreme Court, in reviewing a very similar use of the yellow traffic light analogy, concluded it was a permissible means of explaining the concept of premeditation and deliberation to the jury. (*People v. Avila* (2009) 46 Cal.4th 680, 715.) In *Avila*, the court held the prosecutor did not improperly argue the calculated judgment whether to commit murder was the equivalent of a decision to stop at a yellow light; rather, it was simply an illustration of how quickly a decision may be made yet nevertheless be premeditated and deliberate. (*Ibid.*) We are bound by the decisions of the California Supreme

18

Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Therefore, we reject Thompson's claim of error.

## V.

### CORRECTION OF SENTENCE ON COUNT 2

Thompson argues the trial court improperly imposed a sentence of seven years to life for the attempted murder in count 2 and instead should have sentenced him to a term of life in prison with a minimum parole eligibility of seven years. The Attorney General concedes the court erred. We agree and remand to the court to modify the sentence on count 2.

The punishment for attempted willful, deliberate, and premeditated murder is "imprisonment in the state prison for life with the possibility of parole." (§ 664, subd. (a).) A defendant serving a life sentence shall not be paroled until serving a minimum of seven years in prison. (§ 3046, subd. (a)(1).) Accordingly, the correct statement of Thompson's sentence for attempted murder in count 2 is life with the possibility of parole. (*People v. Wong* (2018) 27 Cal.App.5th 972, 977–978, fn. 4 [noting "there is no minimum term" for a defendant found guilty of an attempt to commit willful, deliberate, and premeditated murder; rather, "there is a minimum parole eligibility of seven years, but that is not part of the sentence that is pronounced"].)

Accordingly, upon remand, the trial court shall prepare an amended abstract of judgment which corrects Thompson's sentence for attempted murder in count 2 to life in prison with the possibility of parole.

## VI.

### ENTITLEMENT TO A *FRANKLIN* HEARING

Thompson, who was 25 years old at the time of the shooting, argues his case should be remanded to the trial court to permit him to make

19

a record of mitigating evidence tied to his youth, pursuant to *Franklin*. At the time of Thompson's trial and sentencing in 2023, defense counsel did not present any evidence regarding his level of maturity, cognitive ability, or other youth-related factors or raise the need to create a record for Thompson's future youth offender parole eligibility hearing. We agree Thompson is entitled to request a *Franklin* proceeding.

A. *Relevant Law*

Because he committed the charged crimes at the age of 25 and received an indeterminate sentence, Thompson is entitled to a youth offender parole hearing during the 25th year of his sentence. (§ 3051, subd. (a)(1), (b)(3).) When determining whether to grant parole, the Board of Parole Hearings (Board) "shall give great weight to the diminished culpability of youth as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity . . . ." (§ 4801, subd. (c).)

"The criteria for parole suitability set forth in . . . sections 3051 and 4801 contemplate that the Board's decisionmaking at [a defendant's] eventual parole hearing will be informed by youth-related factors, such as his cognitive ability, character, and social and family background at the time of the offense." (*Franklin*, *supra*, 63 Cal.4th at p. 269.) This information may include statements by "'[f]amily members, friends, school personnel, faith leaders, and representatives from community-based organizations with knowledge about the individual before the crime.'" (*Id.* at p. 283.) *Franklin* observed that "[a]ssembling such statements 'about the individual before the crime' is typically a task more easily done at or near the time of the juvenile's offense rather than decades later when memories have faded, records may have been lost or destroyed, or family or community members may have relocated or passed away." (*Id.* at pp. 283-284.)

20

*B. Analysis*

The Attorney General argues Thompson forfeited the opportunity to request a *Franklin* hearing because he failed to do so at the time of sentencing, citing *People v. Medrano* (2019) 40 Cal.App.5th 961 (*Medrano*). In *Medrano*, the court declined to remand the case for a *Franklin* hearing but affirmed the judgment without prejudice to allow the defendant to file a motion in the trial court under section 1203.01 requesting such a hearing. (*Medrano,* at p. 968.)

*Medrano* is distinguishable because, in that case, the court of appeal affirmed the conviction and did not have cause to remand the case. Here, because we are already remanding to the court for the limited purpose of modifying Thompson's sentence on count 2, it is unnecessary to require Thompson to file a separate motion in the trial court under section 1203.01 to obtain a *Franklin* hearing. Instead, on remand, we direct the court to conduct a *Franklin* proceeding if Thompson requests one. If he does, then both parties should be permitted "to put on the record any relevant evidence that demonstrates [Thompson's] 'culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors.'" (*In re Loza* (2018) 27 Cal.App.5th 797, 807.)

## VII.

### RESTITUTION FINE

Thompson contends the $300 restitution fine imposed at sentencing in 2023 violates federal and state prohibitions against ex post facto laws because, at the time he committed the crime in 2013, the minimum restitution fine was $280. We conclude Thompson's claim of error is without merit.

When Thompson committed the instant crimes in 2013[2], the minimum restitution fine was $280. (former § 1202.4, subd. (b)(1).) Effective January 1, 2014, the minimum restitution fine was raised to $300. (§ 1202.4, subd. (b)(1).) At the time of sentencing in 2023, the trial court imposed a restitution fine of $300, which was within the statutory mandated range of $280 to $10,000, under the former statute in effect when Thompson committed the crimes in 2013. (§ 1202.4, subd. (b)(1).)Defense counsel did not object at sentencing to the imposition of the restitution fine.

Both the federal and state constitutions prohibit the imposition of ex post facto laws. (U.S. Const., art. 1, § 10, Cal. Const., art. I, § 9.) Because "the imposition of restitution fines constitutes punishment, . . . [it] is subject to the proscriptions of the ex post facto clause and other constitutional provisions." (*People v. Souza* (2012) 54 Cal.4th 90, 143.) Thus, the trial court was required to apply the law in effect when Thompson committed the offenses in 2013 when determining his restitution fine. (See *Ibid.*)

We agree with the Attorney General the claim is waived because defense counsel did not object at the time of sentencing. "[T]he rule of forfeiture is applicable to ex post facto claims [citation], particularly where any error could easily have been corrected if the issue had been raised at the sentencing hearing." (*People v. Martinez* (2014) 226 Cal.App.4th 1169, 1189.)

Moreover, absent evidence to the contrary, it is presumed the trial court properly exercised its legal duty. (*Ross v. Superior Court* (1977) 19 Cal.3d 899, 913.) Thus, without any explicit statement by the court it was imposing the minimum $300 restitution fine based upon the statute in effect

___

[2] All citations to former section 1202.4, are to the version of the statute enacted by Stats. 2011, chapter 358, section 1.

at the time of sentencing, rather than an amount within the statutory range of up to $10,000 at the time the crime was committed in 2013, we assume the court properly exercised its discretion.

## DISPOSITION

We remand the case to the trial court to prepare an amended abstract of judgment which properly states Thompson's sentence on count 2. The court shall forward a certified copy of the same to the Department of Corrections and Rehabilitation. On remand, we also direct the court to conduct a *Franklin* proceeding if Thompson so requests. The judgment is otherwise affirmed.


DELANEY, J.

WE CONCUR:


MOORE, ACTING P. J.


MOTOIKE, J.